# EXHIBIT 1

IN THE CIRCUIT COURT OF THE THIRTEENTH CIRCUIT COURT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

CLEARVIEW IMAGING, LLC d/b/a
CLEARVIEW OPEN MRI, as
assignee, individually, and on behalf
of all similarly situated,

      **Class Representation**

      Plaintiff,

      Case No. _____

vs.

      Division _____

PROGRESSIVE SELECT
INSURANCE COMPANY,

      Defendant.

_____/

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Pursuant to Florida Rules of Civil Procedure 1.100 and 1.220, Plaintiff, Clearview Imaging,

LLC d/b/a Clearview Open MRI (the **"Health Care Provider"**), as assignee, individually, and on

behalf of all similarly situated, hereby asserts the following claims against Defendant Progressive

Select Insurance Company (the **"Insurance Company"**), and states:

### Preliminary Allegations

1.  This is an action asserting class action claims and/or individual claims for

declaratory relief, injunctive relief, and damages.

2.  The amount in controversy exceeds $15,000, exclusive of interest, attorneys' fees

and costs.

3.  The Health Care Provider is, and at all material times has been, a Florida

professional association that provides health care services to Florida residents who have

sustained personal injuries in motor vehicle accidents, and who have assigned to the Health Care

Provider their insurance benefits under automobile insurance policies issued by the Insurance Company.

4.     The Insurance Company is a corporation doing business under the laws of the State of Florida, and at all material times, sold automobile insurance, including personal injury protection ("**PIP**") coverage, in the State of Florida.

5.     This case involves provisions generally found in all of the Insurance Company's insurance policy forms used in the State of Florida since 2013, a sample of which is attached hereto as "**Exhibit A**" (the "**Insurance Policy**").

6.     This case involves a dispute concerning the amount of insurance benefits which must be paid by the Insurance Company pursuant to the terms of the Insurance Policy, when the Insurance Company erroneously reduces the insured patient's coinsurance portion of a medical bill.

7.     Venue is proper in Hillsborough County, Florida because the Insurance Company has offices for transaction of customary business in Hillsborough County, Florida, and/or one or more of the causes of action set forth below arose and/or accrued in Hillsborough County, Florida.

8.     All conditions precedent to the maintenance of this action have occurred, have been performed, or have been waived.

### Background Information Concerning Florida Motor Vehicle No-Fault Law

9.     The "Florida Motor Vehicle No-Fault Law" was originally enacted in 1971 and is a set of 12 statutes found in Sections 627.730 through 627.7405, Florida Statutes. *See*, Ch. 71-252, Laws of Fla. (1971).

10.     This case involves the versions of the Florida Motor Vehicle No-Fault Law in effect since January 1, 2013, as enacted in Chapter 2012-197, Laws of Florida.

11.     PIP coverage is governed by Section 627.736, Florida Statutes (the **"PIP statute"**), which is one of the statutes within the Florida Motor Vehicle No-Fault Law.

12.     Since 1971, the PIP statute has always included provisions which explained that PIP insurers are required to pay up to $10,000 of the insured's reasonable medical expenses. *See*, §627.736(1), Fla. Stat. (1971-2019). This provision is known as the PIP statute's "reasonable medical expenses coverage mandate" (the **"Reasonable Medical Expenses Coverage Mandate"**). As explained by the Florida Supreme Court, "no insurer can disclaim" the PIP statute's Reasonable Medical Expenses Coverage Mandate. *Allstate Ins. Co. v. Orthopedic Specialists*, 212 So.3d 973, 977 (Fla. 2017).

13.     The PIP statute's Reasonable Medical Expenses Coverage Mandate requires all motor vehicle insurance policies to pay "Eighty percent of all reasonable expenses" for medical services covered by PIP. *See*, §627.736(1)(a), Fla. Stat. (2012-2019).

14.     While PIP insurance covers 80% of the insured's reasonable medical expenses, the insured is personally responsible for paying the remaining 20% portion of the medical bill as coinsurance, which is also sometimes also referred to as the co-payment.

15.     Since 1971, the PIP statute has always included a fact dependent method (the **"Fact Dependent Method"**) for calculating the amount of reasonable medical expenses covered by PIP statute's Reasonable Medical Expenses Coverage Mandate. *See*, §627.736(5), Fla. Stat. (1971-1997); *See*, §627.736(5)(a), Fla. Stat. (1998-2007); §627.736(5)(a)1, Fla. Stat. (2008-2011); §627.736(5)(a), Fla. Stat. (2012-2019).

16.     Starting in 2008, the Florida Legislature added a second alternative payment calculation method, which is optional and permissive, which states that PIP insurers "may limit reimbursement to 80 percent of [an enumerated] schedule of maximum charges" and that method it is commonly referred to as the "**Fee Schedule Method.**"[1] *See,* §627.736(5)(a)2-5, Fla. Stat. (2008-2011); §627.736(5)(a)1-5, Fla. Stat. (2012-2019).[2]

17.     Under the PIP statute, only the "insurer" is allowed to limit its own "reimbursement" to 80% the schedule of maximum charges set forth in the Fee Schedule Method. *See,* §627.736(5)(a)1, Fla. Stat. (2012-2019); *Progressive Select Ins. Co. v. Florida Hosp. Med. Cntr.,* 260 So.3d 219, 224 (Fla. 2018) ("section 627.736(5)(a) 1. only permits an 'insurer' to limit 'reimbursement' based on the schedule of maximum charges").

18.     In contrast, the Fee Schedule Method does not apply to any "amounts that are not covered by the insured's personal injury protection coverage due to the coinsurance amount or maximum policy limits." *See,* §627.736(5)(a)4, Fla. Stat. (2012-2019). In other words, the Fee Schedule Method does not apply to portions of a medical bill that the insured is responsible for paying. *See, Progressive,* 260 So.3d at 224 ("There is no basis for concluding that the reimbursement limitation applies to charges ... which the insured alone is obligated to pay") (internal quotation marks omitted).

---

[1] *See, e.g., Geico Gen. Ins. Co. v. Virtual Imaging Services, Inc.,* 141 So.3d 147, 158 (Fla. 2013) (referring to the "fee schedule method").

[2] As of January 1, 2013, an amendment to the PIP statute resulted in the renumbering of the subsections of the Fact Dependent Method and the Fee Schedule Method. Before January 1, 2013, the Fact Dependent Method was found in subsection (5)(a)1, but it is now found in subsection (5)(a). Before January 1, 2013, the Fee Schedule Method was found in subsections (5)(a)2-5, but it is now found in subsections (5)(a)1-5.

19. For purposes of this lawsuit, the pertinent provisions of the PIP statute state the following:

627.736 Required personal injury protection benefits; exclusions; priority; claims.—

*[The "Reasonable Medical Expenses Coverage Mandate" is found in (1)(a), and states:]*

(1) REQUIRED BENEFITS.—An insurance policy complying with the security requirements of s. 627.733 must provide personal injury protection ... to a limit of $10,000 in medical and disability benefits and $5,000 in death benefits resulting from bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle as follows:

(a) Medical benefits.—**Eighty percent of all reasonable expenses** for medically necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices and medically necessary ambulance, hospital, and nursing services if the individual receives initial services and care ....

. . . . .

*[The "Fact Dependent Method" is found in (5)(a), and states:]*

(5) CHARGES FOR TREATMENT OF INJURED PERSONS.—

(a) A physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered, and the insurer providing such coverage may pay for such charges directly to such person or institution lawfully rendering such treatment if the insured receiving such treatment or his or her guardian has countersigned the properly completed invoice, bill, or claim form approved by the office upon which such charges are to be paid for as having actually been rendered, to the best knowledge of the insured or his or her guardian. However, such a charge may not exceed the amount the person or institution customarily charges for like services or supplies. In determining whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, reimbursement levels in the community and various federal and state medical fee

5

schedules applicable to motor vehicle and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

[*The " Fee Schedule Method" is found in (5)(a)1-5, and states in pertinent part:*]

    1.  The *__insurer__* **may limit *__reimbursement__*** to 80 percent of the **following schedule of maximum charges**....

. . . . .

    4.  If an insurer limits payment as authorized by subparagraph 1., the person providing such services, supplies, or care may not bill or attempt to collect from the insured any amount in excess of such limits, *__except__* **for amounts that are not covered by the insured's personal injury protection coverage due to the coinsurance amount or maximum policy limits**.

§627.736(1)(a) and (5)(a)1 and 4, Fla. Stat. (2012-2015) (emph. added).

    20.  Between the two methods, the Fact Dependent Method is the "default" method, and it generally generates the *__highest__* level of PIP benefits that a health care provider can recover under the PIP statute,[3] while the Fee Schedule Method generally generates the *__minimum__* or lowest level of PIP benefits that a health care provider can recover under the PIP statute.[4]

### The Insurance Policy

    21.  "Part II(A) – Personal Injury Protection Coverage" of the Insurance Policy governs PIP coverage and purports to elect the Fee Schedule Method, with certain deviations. Several

---

[3] *See, e.g., Allstate Fire & Cas. Ins. v. Stand-Up MRI of Tallahassee, P.A.,* 188 So.3d 1, 2-3 (Fla. 1st DCA 2015) (Fact Dependent Method "is the default methodology for calculating PIP reimbursements, which also apparently results in higher reimbursements" than the Fee Schedule Method); *Geico Indemnity Co. v. Physicians Group, LLC, a.a.o., Paul Androski*, 47 So.3d 354, 356 (Fla. 2d DCA 2010) (noting that amount payable for surgical procedure was $10,800 under the Fact Dependent Amount Method, but was merely $1,122 under the Fee Schedule Method).

[4] *See, Nationwide Mutual Insurance Company v. AFO Imaging, Inc.,* 71 So.3d 134, 137 (Fla. 2d DCA 2011) (the Medicare Fee Schedule Method of Section 627.736(5)(a)2 is "utilized in computing the *minimum* amount" payable by PIP insurance) (emph. added).

6

courts have held that the Insurance Company has not lawfully elected the Fee Schedule Method.[5]

However, the question of whether or not the Insurance Policy lawfully elects the Fee Schedule

Method or not has no bearing on the outcome of this lawsuit, as this case involves the portion of

the medical bill that is unaffected by the Fee Schedule Method.

22.     In pertinent part, Part II(A) of the Insurance Policy includes the following

provisions in which the Insurance Company purports to extend the Fee Schedule Method

reductions to the insured's co-payment and agrees to indemnify its insured for disputed

reductions applied by the Insurance Company:

> We may reduce any payment to a medical provider under this Part II(A) by any
> amounts we deem to be unreasonable medical benefits. Any reductions taken will
> not affect the rights of an insured person for coverage under this Part II(A).
> **Whenever a medical provider agrees to a reduction of medical benefits
> charged, any co-payment owed by an insured person will also be reduced.**
>
> **The insured person shall not be responsible for payment of any reductions
> applied by us. If a medical provider disputes an amount paid by us, we will
> be responsible for resolving such dispute. If a lawsuit is initiated against an
> insured person as a result of the reduction of a medical bill by us, we will
> provide the insured person with a legal defense by counsel of our choice, and
> pay any resulting judgment.** . . .

*See*, Exhibit A (emph. added).

23.     At least two courts have ruled that the provision of the Insurance Policy which

purports to extend the Fee Schedule Method reductions to the insured's 20% coinsurance or co-

payment amount is unlawful. *See Iliev*, 25 Fla. L. Weekly Supp. 564a, at ¶47; *Abreu*, 25 Fla. L.

Weekly Supp. 564a at ¶45. And, the Florida Supreme Court has held that there is "no basis for

---

[5] *See, e.g., Hess Spinal & Medical Centers, Inc., a.a.o. Stefan Iliev v. Progressive American Ins.
Co.,* 25 Fla. L. Weekly Supp. 564a (Hillsborough County Ct. Aug. 22, 2017); *Advantacare of
Florida, LLC, a.a.o. Danely Abreu v. Progressive American Ins. Co.,* 25 Fla. L. Weekly Supp.
61a (Volusia County Ct. March 17, 2017), *affirmed,* Case No. 2017-1008-APCC (Fla. 7th Cir.
Ct. App. Div. March 28, 2018).

concluding that the reimbursement limitation applies to charges ... which the insured alone is obligated to pay." *Progressive*, 260 So.3d at 224 (internal quotation marks omitted).

## Background Information Concerning the Controversy

24. On or about June 25, 2018, A.M. (the **"Insured Patient"**) was involved in a motor vehicle accident, and as a result, sustained bodily injuries related to the operation, maintenance, or use of a motor vehicle.

25. At the time of that accident, the Insured Patient was a contracting party and/or a named insured and/or an omnibus insured under an automobile insurance policy issued by the Insurance Company, consistent with the exemplar of the Insurance Policy attached hereto as **"Exhibit A,"** which was in full force and effect, and provided PIP coverage as required by law to comply with the Florida Motor Vehicle No-Fault Law.

26. As a result of the injuries sustained by the Insured Patient at that accident, the Health Care Provider subsequently rendered health care services to the Insured Patient on or about September 25, 2018.

27. Prior to providing such medical services and as a condition to providing them, the Health Care Provider obtained from the Insured Patient a written assignment of benefits, a redacted copy of which is attached hereto as **"Exhibit B."**

28. After providing health care services to the Insured Patient, the Health Care Provider timely submitted a bill to the Insurance Company for the services rendered.

29. In response to the bill for health care services provided to the Insured Patient, the Insurance Company issued an "Explanation of Reimbursement" form which purported to extend the Fee Schedule Method reductions to the portion of the bill that applies to the Insured Patient's

20% coinsurance or co-payment. A redacted copy of the Explanation of Reimbursement form is attached hereto as "**Exhibit C**."

30.     The Health Care Provider contends that the Fee Schedule Method can only be applied to the 80% portion of the medical bill covered by the Reasonable Medical Expenses Mandate and cannot lawfully be extended to the portion of a medical bill that is covered by a PIP insured's 20% coinsurance or co-payment amount.   The Insurance Company disagrees, and routinely purports to extend the Fee Schedule Method reductions to the portion of a medical bill that is covered by the PIP insured's 20% coinsurance or co-payment amount.

31.     The Insurance Company's business practices described herein are routine, ongoing, and continuing in nature.

32.     The Health Care Provider regularly provides health care services to the Insurance Company's PIP insureds, and reasonably anticipates that this will continue into the foreseeable future.

## Class Action Allegations

33.     Pursuant to Florida Rule of Civil Procedure 1.220, the Health Care Provider, together with such other individuals that may join this action as class representatives, hereby brings Counts I, II, and III of this complaint on its own behalf and on behalf of all those similarly situated persons defined as follows:

All persons and/or entities who:

(a)     are health care providers operating in the State of Florida;

(b)     issued a medical bill for health care services provided to a patient who had PIP coverage under the Insurance Policy issued by the Insurance Company during the 5-year time period prior to the filing of this complaint;

(c)    own an assignment of benefits from said insured patient for insurance benefits associated with the medical bill; and

(d)    received an "Explanation of Reimbursement" form from the Insurance Company which purported to extend the Fee Schedule Method reductions to the portion of the medical bill that applies to the insured patient's 20% coinsurance or co-payment;

excluded from the foregoing definition are any coinsurance or co-payment claims otherwise described above which: (a) have already been fully paid by the insured or the Insurance Company, or were otherwise satisfied through litigation or settlement or release; (b) were denied or reduced for any reason other than the Insurance Company's purported application of the Fee Schedule Method to the portion of the medical bill that applies to the insured patient's 20% coinsurance or co-payment; and/or (c) are the subject of pending litigation against the insured patient or the Insurance Company as of the date of any class certification order or other deadline established by the Court (hereinafter the **"Class"**).

34.    The Health Care Provider reserves the right to amend the Class definition as discovery proceeds and to conform to the evidence.

35.    While the exact number of class members is unknown at this time, the Health Care Provider submits that the numbers of class members are so numerous that separate joinder of each member is impractical. For example, according to data published by the Florida Department of Highway Safety and Motor Vehicles, there are well over 400,000 traffic accidents per year in the State of Florida, and a significant percentage of those traffic accidents result in injuries. *See, https://flhsmv.gov/pdf/crashreports/crash_facts_2017.pdf.* Accordingly, the Health Care Provider has a good faith reason to believe that, during the five-year time period described by the Class definition herein, there are more than enough similarly situated health care providers who are potential class members to satisfy the numerosity requirements of Rule 1.220.

36.     This action poses questions of law and fact that are common to and affect the rights of all members of the Class. Such questions of law and fact include but are not limited to the following:

(a)     With respect to medical bills for health care services rendered by the Class member to patients with PIP coverage under the Insurance Policy, did the Insurance Company issue an "Explanation of Reimbursement" form which purported to extend the Fee Schedule Method reductions to the portion of the bill that applies to the Insured Patient's 20% coinsurance or co-payment?

(b)     Is a PIP insurer lawfully authorized to extend the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment?

(c)     Does the Insurance Policy unlawfully purport to extend the Fee Schedule Method reductions to the portion of a medical bill that is covered by the insured patient's 20% coinsurance or co-payment?

(d)     Pursuant to terms of the Insurance Policy, did the Insurance Company agree to assume responsibility or indemnify its insured for disputed reductions applied by the Insurance Company?

(e)     Are the Health Care Provider and/or the Class members entitled to declaratory relief to determine the parties' respective rights and obligations concerning Section 627.736(5)(a)1 and 4, and/or the provisions of the Insurance Policy?

(e)     Are the Health Care Provider and/or the Class members entitled to injunctive relief to require the Insurance Company to cease and desist from continuing to

11

extend the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment?

(f)      Are the Health Care Provider and/or the Class members entitled to recover damages associated with the Insurance Company's business practice of purporting to extend the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment?

37.    Based on the facts and circumstances set forth herein, the Health Care Provider's claims are typical of the claims of the members of the Class.

38.    Further, other individual plaintiffs may elect to join this action upon such grounds as the Court may set forth and these individuals will likewise have issues that are common to those of all other class members.

39.    The Health Care Provider has retained the undersigned attorneys who are well-qualified and experienced in handling class action litigation and will adequately protect the interests of the Class.

40.    With respect to Counts I and II below, the Health Care Provider brings this class action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) on the grounds that the Insurance Company's actions or omissions as alleged herein, are generally applicable to all Class members thereby making declaratory and/or injunctive relief concerning the Class as a whole appropriate.

41.    With respect to Count III below, the Health Care Provider brings this class action pursuant to Florida Rule of Civil Procedure 1.220(b)(3) on the grounds that the questions of law or fact common to the Health Care Provider's claim and the claim of each Class member predominate over any question of law or fact affecting only individual Class members, and class

representation is superior to other available methods for the fair and efficient adjudication of the controversy.

42.     Alternatively, pursuant to Florida Rule of Civil Procedure 1.220(d)(4), to the extent appropriate, any claim asserted herein may be brought or maintained on behalf of the Class concerning particular issues.

## Count I –Declaratory Relief

43.     This is a class action for declaratory relief pursuant to Chapter 86, Florida Statutes, brought by the Health Care Provider and the Class against the Insurance Company. Alternatively, in the event that class certification is unavailable, this count is brought by the Health Care Provider against the Insurance Company.

44.     The Health Care Provider realleges and incorporates by reference paragraphs 1-40 and 42 above.

45.     This is not an action for PIP benefits under Section 627.736, and therefore, the pre-suit demand letter requirement of Section 627.736(10), Florida Statutes does not apply.

46.     The Health Care Provider takes the position that the Fee Schedule Method can only be applied to the 80% portion of the medical bill covered by the Reasonable Medical Expenses Mandate, and that a PIP insurer is not lawfully authorized to extend the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment. The Insurance Company disagrees and routinely purports to extend the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment.

47.     The Health Care Provider contends that the Insurance Policy unlawfully purports to extend the Fee Schedule Method reductions to the portion of a medical bill that is covered by

the insured patient's 20% coinsurance or co-payment. The Insurance Company disagrees and contends that it is lawful to extend the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment.

48.     The Health Care Provider contends that pursuant to terms of the Insurance Policy the Insurance Company agreed to assume responsibility for or indemnify its insured for disputed reductions applied by the Insurance Company. The Insurance Company disagrees and does not compensate health care providers for the Fee Schedule Method reductions it purports to extend to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment.

49.     The Health Care Provider is in doubt concerning its rights, and a bona fide present controversy exists between the Health Care Provider, the Class members, and the Insurance Company concerning the proper interpretation of Section 627.736(5)(a)5(a)1 and 4, and other applicable law, and the express terms of the Insurance Policy, and the parties' respective rights and obligations thereunder, with respect to issues which include but are not limited to the following:

(a)     With respect to medical bills for health care services rendered by the Class member to patients with PIP coverage under the Insurance Policy, did the Insurance Company issue an "Explanation of Reimbursement" form which purported to extend the Fee Schedule Method reductions to the portion of the bill that applies to the Insured Patient's 20% coinsurance or co-payment?

(b)     Is a PIP insurer is lawfully authorized to extend the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment?

14

(c)     Does the Insurance Policy unlawfully purport to extend the Fee Schedule Method reductions to the portion of a medical bill that is covered by the insured patient's 20% coinsurance or co-payment?

(d)     Pursuant to terms of the Insurance Policy, did the Insurance Company agree to assume responsibility for or indemnify its insured for disputed reductions applied by the Insurance Company?

50.     The rights, status, or other equitable or legal relations of the parties are affected by Section 627.736(5)(a)1 and 4, and other applicable law, and the express terms of the Insurance Policy. Accordingly, pursuant to Chapter 86, the Health Care Provider and the Class members may obtain a declaration of rights, status, or other equitable or legal relations thereunder.

51.     Section 86.011, Florida Statutes states that this Court has "jurisdiction ... to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed." Section 86.111, Florida Statutes states, "The existence of another adequate remedy does not preclude a judgment for declaratory relief." Thus, regardless of whether damages are available to the Health Care Provider or the Class under Count III, this Court still has jurisdiction to determine the parties' respective rights, status, and other equitable or legal relations under the Florida PIP statute and/or the subject PIP insurance policy.

52.     Section 86.011(2), Florida Statutes states that "The court may render declaratory judgments on the existence, or nonexistence ... Of any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future." Thus, the Court still has jurisdiction to determine whether the Insurance Company's conduct has been unlawful, in order to prevent the same unlawful conduct in the future.

15

53.     Section 86.021, Florida Statutes states, "Any person claiming to be interested or who may be in doubt about his or her rights under a … contract, … or whose rights, status, or other equitable or legal relations are affected by a statute … may have determined any question of construction or validity arising under such statute, … contract, … or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder." Thus, the Court has jurisdiction to determine the rights of "any person" (such as the Health Care Provider) who is in doubt about its rights under the PIP statute and/or the Insurance Policy.  Because the Health Care Provider and the Class members routinely provide health care services to the Insurance Company's PIP insureds, the issues raised in this declaratory relief claim affect the Health Care Provider and the Class members on an ongoing and continuing basis.

54.     Section 86.031, Florida Statutes states, "A contract may be construed either before or after there has been a breach of it." Under this statute, the Court has jurisdiction to determine whether the Insurance Company has violated the PIP statute by extending the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment, and/or whether this conduct will violate the PIP Statute in the future.

55.     Section 86.051, Florida Statutes states, "Any declaratory judgment rendered pursuant to this chapter may be rendered by way of anticipation with respect to any act not yet done or any event which has not yet happened, and in such case the judgment shall have the same binding effect with respect to that future act or event, and the rights or liability to arise therefrom, as if that act or event had already been done or had already happened before the judgment was rendered." This statute confirms that the Court has jurisdiction to determine the legality of the Insurance Company's past conduct, in order to gauge its anticipated future conduct and to prevent unlawful conduct in the future.

56.    Section 86.071, Florida Statutes states, in pertinent part, that when a declaratory action "concerns the determination of an issue of fact, the issue may be tried as issues of fact are tried in other civil actions in the court in which the proceeding is pending. To settle questions of fact necessary to be determined before judgment can be rendered, the court may direct their submission to a jury."  Thus, the existence of disputed fact issues does not prevent the Court from providing declaratory relief under Chapter 86.

57.    The Health Care Provider has retained the undersigned counsel to prosecute this action and is entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428, Florida Statutes.

### Count II –Injunctive Relief

58.    This is a common law action for injunctive relief brought by the Health Care Provider and the Class against the Insurance Company.  Alternatively, in the event that class certification is unavailable, this count is brought by the Health Care Provider against the Insurance Company.

59.    The Health Care Provider realleges and incorporates by reference paragraphs 1-40 and 42 above.

60.    This is not an action for PIP benefits under Section 627.736, and therefore, the pre-suit demand letter requirement of Section 627.736(10), Florida Statutes does not apply.

61.    The Health Care Provider and the Class members will suffer irreparable injury if the Insurance Company is permitted in the future to continue unlawfully extending the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment, and/or to continue refusing to deny coverage for disputed

reductions applied by the Insurance Company. Examples of such irreparable injury include but are not limited to the following:

(a)     Under Section 627.736(5)(a)4, "If an insurer limits payment as authorized by [Section 627.736(5)(a)1], the person providing such services, supplies, or care may not bill or attempt to collect from the insured any amount in excess of such limits, except for amounts that are not covered by the insured's personal injury protection coverage due to the coinsurance amount or maximum policy limits." This prohibition applies only to the 80% portion of a medical bill that the Insurance Company is responsible for covering and does not apply to the insured patient's 20% coinsurance or co-payment portion of the medical bill. Thus, the Insurance Company is placing Class members in the untenable position of being unable to recover full payment from the insured patient and is exacting an involuntary discount from Class members.

(b)     Absent injunctive relief requiring the Insurance Company to cease and desist from such wrongful conduct in the future, the Health Care provider and the Class members are left in the untenable position of having to address the Insurance Company's continuing and ongoing wrongs with a multiplicity of lawsuits, in the various different county courts across the State of Florida, with the risk of suffering inconsistent and varying results.

(c)     The Insurance Company's continuing and ongoing unlawful conduct places its own PIP insureds at risk that Class members will refuse to treat them without receiving full payment in advance of receiving medical services needed to properly treat and/or diagnose their health condition, and this will lead to incalculable or unascertainable losses to third parties.

18

62.      The Health Care Provider and the Class members have a clear legal right to seek an injunction requiring that the Insurance Company cease and desist in the future from unlawfully extending the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment, or alternatively, to cease and desist from denying coverage for disputed reductions applied by the Insurance Company.

63.      The Health Care Provider and the Class members have no other adequate remedy at law.

64.      The injunctive relief requested by the Health Care Provider and the Class members would not be contrary to the interest of the public generally.

65.      The Health Care Provider has retained the undersigned counsel to prosecute this action and is entitled to the recovery of its reasonable attorneys' fees and costs pursuant to Section 627.428, Florida Statutes.

## Count III -- Breach of Contract

66.      This is a common law action for breach of contract brought by the Health Care Provider and the Class against the Insurance Company.  Alternatively, in the event that class certification is unavailable, this count is brought by the Health Care Provider against the Insurance Company.

67.      The Health Care Provider realleges and incorporates by reference paragraphs 1-39 and 41-42 above.

68.      This is not an action for PIP benefits under Section 627.736, and therefore, the pre-suit demand letter requirement of Section 627.736(10), Florida Statutes does not apply.

69. The Insurance Company unlawfully extended the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment.

70. As a direct and proximate result of the Insurance Company's unlawful reductions, the Health Care Provider and the Class members have incurred damages.

71. Pursuant to the Class definition set forth herein, none of Class members' bills were denied or reduced for any reason other than the Insurance Company's application of the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment.

72. The Health Care Provider has retained the undersigned counsel to prosecute this action and is entitled to the recovery of its reasonable attorneys' fees and costs pursuant to Sections 627.428, Florida Statutes.

## PRAYER FOR RELIEF

**WHEREFORE,** the Health Care Provider respectfully requests this Honorable Court to award the following relief against the Insurance Company:

a. Issue an order certifying that Counts I, II and/or III, and/or particular issues raised therein are properly maintainable as a class action under Rule 1.220(b)(2), (b)(3), and/or (d)(4).

b. Issue an order appointing the Health Care Provider as the Class Representative.

c. Issue an order appointing the undersigned law firms as class counsel.

d. Issue an order granting a declaratory judgment under Count I declaring the parties' respective rights and obligations under Section 627.736(5)(a)1 and 4, any other applicable law, and the Insurance Policy.

e.      Issue an order granting a temporary and/or permanent injunction under Count II requiring the Insurance Company to cease and desist in the future from continuing to unlawfully extend the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment, or alternatively, to cease and desist from denying coverage for disputed reductions applied by the Insurance Company.

f.      Issue a judgment for damages against the Insurance Company and in favor of the Health Care Provider and/or the Class under Count III, together with interest.

g.      Issue an order requiring the Insurance Company to pay the Health Care Provider's reasonable attorneys' fees and costs pursuant to Sections 627.428.

h.      Grant such other relief as this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

The Health Care Provider, on all on behalf of itself and all others similarly situated who may join this action, hereby demands a trial by jury on all the issues so triable.

DATED this 12th day of April, 2019.

**[Attorney's signature appears on the following page.]**

21

Respectfully submitted,

J. Daniel Clark, FBN 0106471
CLARK & MARTINO, P.A.
3407 W. Kennedy Boulevard
Tampa, FL 33609
Telephone: (813) 879-0700
Primary email: dclark@clarkmartino.com
Secondary email: rsmith@clarkmartino.com

and

David M. Caldevilla, FBN 654248
Primary Email: dcaldevilla@dgfirm.com
Secondary Email: serviceclerk@dgfirm.com
de la PARTE & GILBERT, P.A.
Post Office Box 2350
Tampa, FL 33601-2350
Telephone: (813) 229-2775

**COUNSEL FOR PLAINTIFF**

# EXHIBIT A

# Florida
## Auto Policy



INSURANCE FROM *PROGRESSIVE*

Form 9610A FL (10/05)
Version 2.0

*9610A FL 1005*



## CONTENTS

INSURING AGREEMENT .................................................................................. 1

GENERAL DEFINITIONS ................................................................................. 1

PART I - LIABILITY TO OTHERS
    Insuring Agreement - Bodily Injury ............................................ 2
    Insuring Agreement - Property Damage ..................................... 2
    Additional Definition ................................................................. 3
    Additional Payments ................................................................. 3
    Exclusions ................................................................................ 4
    Limits of Liability ...................................................................... 5
    Financial Responsibility Laws ................................................... 6
    Other Insurance ....................................................................... 6
    Out-of-State Coverage .............................................................. 7

PART II(A) - PERSONAL INJURY PROTECTION COVERAGE
    Insuring Agreement .................................................................. 7
    Additional Definitions ............................................................... 7
    Exclusions ................................................................................ 8
    Extended Personal Injury Protection Coverage .......................... 9
    Limit of Liability ....................................................................... 9
    Other Insurance ..................................................................... 10
    Conditions ............................................................................. 10

PART II(B) - MEDICAL PAYMENTS COVERAGE
    Insuring Agreement ................................................................ 11
    Additional Definitions ............................................................. 12
    Exclusions .............................................................................. 12
    Limits of Liability .................................................................... 13
    Unreasonable or Unnecessary Medical Expenses ..................... 14
    Other Insurance ..................................................................... 14

PART III - UNINSURED MOTORIST COVERAGE
    Insuring Agreement ................................................................ 14
    Additional Definitions ............................................................. 15
    Exclusions .............................................................................. 16
    Limits of Liability .................................................................... 16
    Other Insurance ..................................................................... 18
    Trust Agreement ..................................................................... 19

## PART IV - DAMAGE TO A VEHICLE

Insuring Agreement - Collision Coverage ................................................... 19
Insuring Agreement - Comprehensive Coverage....................................... 19
Insuring Agreement - Full Comprehensive Window Glass Coverage ....... 20
Insuring Agreement - Additional Custom Parts or Equipment Coverage ..... 20
Insuring Agreement - Rental Reimbursement Coverage .......................... 20
Insuring Agreement - Loan/Lease Payoff Coverage ................................ 21
Additional Definitions ............................................................................. 22
Exclusions.............................................................................................. 22
Limits of Liability..................................................................................... 23
Payment of Loss ..................................................................................... 25
No Benefit to Bailee ................................................................................ 25
Loss Payable Clause ............................................................................... 25
Other Sources of Recovery...................................................................... 26
Appraisal ............................................................................................... 26

## PART V - ROADSIDE ASSISTANCE COVERAGE

Insuring Agreement................................................................................. 27
Additional Definitions ............................................................................. 27
Exclusions.............................................................................................. 27
Unauthorized Service Provider ................................................................ 28
Other Insurance ..................................................................................... 28

## PART VI - DUTIES IN CASE OF AN ACCIDENT OR LOSS ......................... 28

## PART VII - GENERAL PROVISIONS

Policy Period and Territory ...................................................................... 29
Changes.................................................................................................. 29
Duty to Report Changes .......................................................................... 30
Settlement of Claims............................................................................... 30
Terms of Policy Conformed to Statutes.................................................... 30
Transfer.................................................................................................. 30
Fraud or Misrepresentation...................................................................... 31
Payment of Premium and Fees ................................................................ 31
Cancellation ........................................................................................... 32
Cancellation Refund................................................................................ 33
Rate Increases........................................................................................ 33
Noncancelable Policy.............................................................................. 33
Nonrenewal............................................................................................ 34
Automatic Termination............................................................................ 34
Legal Action Against Us .......................................................................... 34
Our Rights to Recover Payment ............................................................... 34
Joint and Individual Interests ................................................................... 35
Bankruptcy............................................................................................. 36
Mediation ............................................................................................... 36

## FLORIDA AUTO POLICY

### INSURING AGREEMENT

In return for **your** payment of the premium, **we** agree to insure **you** subject to all the terms, conditions, and limitations of this policy. **We** will insure **you** for the coverages and the limits of liability shown on this policy's **declarations page. Your** policy consists of the policy contract, **your** insurance application, the **declarations page,** and all endorsements to this policy.

### GENERAL DEFINITIONS

The following definitions apply throughout the policy. Defined terms are printed in boldface type and have the same meaning whether in the singular, plural, or any other form.

1. **"Additional auto"** means an **auto you** become the actual or beneficial owner of during the policy period that does not permanently replace an **auto** shown on the **declarations page** if:
   a. **we** insure all other **autos you** own;
   b. the **additional auto** is not covered by any other insurance policy;
   c. **you** notify **us** within 30 days of becoming the owner of the **additional auto;** and
   d. **you** pay any additional premium due.

   An **additional auto** will have the broadest coverage **we** provide for any **auto** shown on the **declarations page. If you** ask **us** to insure an **additional auto** more than 30 days after **you** become the actual or beneficial owner, any coverage **we** provide will begin at the time **you** request coverage.

2. **"Auto"** means a land motor vehicle:
   a. of the private passenger, pickup body, or cargo van type;
   b. designed for operation principally upon public roads;
   c. with at least four wheels; and
   d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.

   However, **"auto"** does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

3. **"Auto business"** means the business of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles.

4. **"Bodily injury"** means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

5. **"Covered auto"** means:
   a. any **auto** or **trailer** shown on the **declarations page** for the coverages applicable to that **auto** or **trailer;**
   b. any **additional auto;**
   c. any **replacement auto;** or
   d. a **trailer** owned by **you.**

6. **"Declarations page"** means the document showing **your** coverages, limits of liability, **covered autos,** premium, and other policy-related information. The

**declarations page** may also be referred to as the Auto Insurance Coverage Summary.

7. **"Occupying"** means in, on, entering, or exiting.
8. **"Property damage"** means physical damage to, destruction of, or loss of use of, tangible property.
9. **"Relative"** means a person residing in the same household as **you**, and related to **you** by blood, marriage, or adoption, and includes a ward, step-child, or foster child. **Your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household.
10. **"Replacement auto"** means an **auto** that permanently replaces an **auto** shown on the **declarations page**. A **replacement auto** will have the same coverage as the **auto** it replaces if the **replacement auto** is not covered by any other insurance policy. However, if the **auto** being replaced had coverage under Part IV - Damage To A Vehicle, such coverage will apply to the **replacement auto** only during the first 30 days after **you** become the actual or beneficial owner unless **you** notify **us** within that 30-day period that **you** want **us** to extend coverage beyond the initial 30 days. If the **auto** being replaced did not have coverage under Part IV - Damage To A Vehicle, such coverage may be added, but the **replacement auto** will have no coverage under Part IV until **you** notify **us** of the **replacement auto** and ask **us** to add the coverage.
11. **"Trailer"** means a non-motorized trailer, including a farm wagon or farm implement, designed to be towed on public roads by an **auto** and not being used:
    a. for commercial purposes;
    b. as an office, store, or for display purposes; or
    c. as a passenger conveyance.
12. **"We"**, **"us"**, and **"our"** mean the underwriting company providing the insurance, as shown on the **declarations page.**
13. **"You"** and **"your"** mean:
    a. a person shown as a named insured on the **declarations page**; and
    b. the spouse of a named insured if residing in the same household at the time of the loss.

## PART I - LIABILITY TO OTHERS

### INSURING AGREEMENT - BODILY INJURY

If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** for which an **insured person** becomes legally responsible because of an accident.

### INSURING AGREEMENT - PROPERTY DAMAGE

If **you** pay the premium for this coverage, **we** will pay damages for **property damage** for which an **insured person** becomes legally responsible because of an accident.

Damages for **bodily injury** and **property damage** include prejudgment interest awarded against an **insured person**, where owed by law.

If **you** pay the premium for Bodily Injury Liability and Property Damage Liability, **we** will settle or defend, at **our** option, any claim for **bodily injury** or **property damage** covered by this Part I. **Our** duty to settle or defend ends after **we** have paid the applicable limit of liability for the accident that is the basis of the lawsuit.

If **you** pay the premium for Property Damage Liability only, **we** will settle or defend, at **our** option, any claim for **property damage** covered by this Part I. **Our** duty to settle or defend ends after **we** have paid the applicable limit of liability for the accident that is the basis of the lawsuit.

Satisfaction by an **insured person** of a judgment for **bodily injury** or **property damage** shall not be a condition precedent to the right or duty of **us** to make payment for such **bodily injury** or **property damage.**

### ADDITIONAL DEFINITION

When used in this Part I:
**"Insured person"** means:
a.  **you** or a **relative** with respect to an accident arising out of the ownership, maintenance, or use of an **auto** or **trailer;**
b.  any person with respect to an accident arising out of that person's use of a **covered auto** with the permission of **you** or a **relative;**
c.  any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a or b above; and
d.  any Additional Interest shown on the **declarations page** with respect only to its liability for the acts or omissions of a person described in a or b above.

### ADDITIONAL PAYMENTS

In addition to **our** limit of liability, **we** will pay for an **insured person:**
1.  all expenses **we** incur in the settlement of any claim or in the defense of an **insured person** in any lawsuit. This does not include attorney fees awarded or assessed against an **insured person;**
2.  interest accruing after entry of judgment, until **we** have paid, offered to pay, or deposited in court, that portion of the judgment which does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured person;**
3.  the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in an amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;
4.  up to $250 for a bail bond required because of an accident resulting in **bodily injury** or **property damage** covered under this Part I. **We** have no duty to apply for or furnish this bond; and

5. reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

**EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.**

Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for:

1. **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any vehicle or trailer while being used to carry persons or property for compensation or a fee, including, but not limited to, pickup or delivery of magazines, newspapers, food, or any other products. This exclusion does not apply to shared-expense car pools;
2. any liability assumed under any contract or agreement by **you** or a **relative**;
3. **bodily injury** to an employee of that **insured person** arising out of or within the course of employment. This exclusion does not apply to domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;
4. **bodily injury** or **property damage** arising out of an accident involving any vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, or an agent or employee of **you** or a **relative**, when using a **covered auto**;
5. **bodily injury** or **property damage** resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed, or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;
6. **bodily injury** or **property damage** due to a nuclear reaction or radiation;
7. **bodily injury** or **property damage** for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
8. any obligation for which the United States Government is liable under the Federal Tort Claims Act. This exclusion will apply only to the damages that are in excess of the minimum limits of liability coverage required by the financial responsibility law of the state of Florida;
9. **bodily injury** or **property damage** caused by an intentional act of any **insured person**, or at the direction of any **insured person**, with the intent to cause injury or damage;
10. **property damage** to any property owned by, rented to, being transported by, used by, or in the charge of that **insured person**. This exclusion does not apply to a rented residence or a rented garage;
11. **bodily injury** to **you** or a **relative**;

4

12. **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any vehicle owned **by you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

13. **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any vehicle owned by a **relative** or furnished or available for the regular use of a **relative**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such vehicle;

14. **bodily injury** or **property damage** arising out of **your** or a **relative's** use of a vehicle, other than a **covered auto,** without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

15. **bodily injury** or **property damage** arising out of the use of a **covered auto** while leased or rented to others or given in exchange for any compensation. This exclusion does not apply to the operation of a **covered auto** by **you** or a **relative**;

16. punitive or exemplary damages; or

17. **bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of any **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. This exclusion will apply only to the damages that are in excess of the minimum limits of liability coverage required by the financial responsibility law of the state of Florida and does not apply to moving traffic violations.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for liability coverage is the most **we** will pay regardless of the number of:

1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:

1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and
3. the amount shown for "property damage" is the most **we** will pay for the total of all **property damage** resulting from any one accident.

The "each person" limit of liability applies to the total of all claims made for **bodily injury** to a person and all claims of others derived from such **bodily injury,** including, but not limited to, emotional injury or mental anguish resulting from the

5

**bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death, if recoverable under the applicable law.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

No one is entitled to duplicate payments for the same elements of damages.

Any payment to a person under this Part I for **bodily injury** will be reduced by:
1. any payment made to that person for **bodily injury** under Part III - Uninsured Motorist Coverage; and
2. any amounts that are paid or payable to that person as personal injury protection benefits.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

An **auto** and attached **trailer** are considered one **auto**. Therefore, the limits of liability will not be increased for an accident involving an **auto** that has an attached **trailer**.

### FINANCIAL RESPONSIBILITY LAWS

When **we** certify this policy as proof of financial responsibility, this policy will comply with the law to the extent required. The **insured person** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as proof of financial responsibility.

### OTHER INSURANCE

If there is any other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. Any insurance **we** provide for a vehicle or trailer, other than a **covered auto**, will be excess over any other collectible insurance, self-insurance, or bond.

However, when **you** or a **relative** rent or lease an **auto**, the liability coverage provided by the lessor's policy shall be primary unless the rental or lease agreement includes a provision in the form specified in Florida Statute §627.7263, as amended, stating that **your** or a **relative's** liability insurance and personal injury protection insurance shall be primary. If the rental or lease agreement includes such provision, **our** duty to pay damages under this Part I, and **our** duty to defend **you** or a **relative** under this Part I, shall be primary to any liability coverage provided by the lessor or owner for **your** or a **relative's** operation of that **auto**. **We** have no duty to defend the lessor or owner of that **auto** under this Part I.

6

## OUT-OF-STATE COVERAGE

If an accident to which this Part I applies occurs in any state, territory, or possession of the United States of America or any province or territory of Canada, other than the one in which a **covered auto** is principally garaged, and the state, province, territory, or possession has:

1. a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limit only for the coverage or coverages shown on the **declarations page** for which **you** have paid the premium; or
2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory, or possession, this policy will provide the greater of:
   a. the required minimum amounts and types of coverage; or
   b. the limits of liability under this policy.

## PART II(A) - PERSONAL INJURY PROTECTION COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay benefits that an **insured person** is entitled to receive pursuant to the Florida Motor Vehicle No-Fault Law, as amended, because of **bodily injury**:

1. caused by an **accident**;
2. sustained by an **insured person**; and
3. arising out of the ownership, maintenance or use of a **motor vehicle.**

Personal Injury Protection Coverage benefits consist of:

1. **medical benefits**;
2. **disability benefits**; and
3. **death benefits.**

### ADDITIONAL DEFINITIONS

When used in this Part II(A):

1. **"Death benefits"** means benefits of $5,000 payable per individual if an **insured person** dies because of injury covered under this Part II(A).
2. **"Disability benefits"** means 60% of any **work loss** per **insured person** from inability to work proximately caused by the injury sustained by the **insured person. Disability benefits** also include all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those services that, but for the **bodily injury**, the **insured person** would have performed without income for the benefit of his or her household.
3. **"Insured person"** means:
   a. **you** or any **resident relative** sustaining **bodily injury** while **occupying** a **motor vehicle**, or when struck by a **motor vehicle** while not **occupying** a self-propelled vehicle;

b. any person sustaining **bodily injury** while **occupying** a **covered auto**; or
c. any person, if a resident of Florida, sustaining **bodily injury** when struck by a **covered auto** while not **occupying** a self-propelled vehicle.

For purposes of this definition, "**covered auto**" includes an attached trailer or semi-trailer designed for use with such vehicle.

4. "**Medical benefits**" means 80% of all reasonable expenses incurred for **medically necessary** medical, surgical, x-ray, dental and rehabilitative services, including prosthetic devices and **medically necessary** ambulance, hospital, and nursing services. **Medical benefits** also include **medically necessary** remedial treatment and services recognized and permitted under the laws of the State of Florida for an injured person who relies upon spiritual means through prayer alone for healing, in accordance with his or her religious beliefs.

5. "**Medically necessary**" refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:
   a. in accordance with generally accepted standards of medical practice;
   b. clinically appropriate in terms of type, frequency, extent, site, and duration; and
   c. not primarily for the convenience of the patient, physician, or other health care provider;

6. "**Motor vehicle**" means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of the State of Florida and any trailer or semi-trailer designed for use with such vehicle. A **motor vehicle** does not include a mobile home or any motor vehicle which is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit authority, or a political subdivision of the state.

7. "**Resident relative**" means a relative of any degree by blood or by marriage who usually makes his or her home in the same family unit, whether or not temporarily living elsewhere.

8. "**Work loss**" means loss of gross income and loss of earning capacity.

## EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II(A).

Coverage under this Part II(A) does not apply to **bodily injury**:
1. sustained by **you** or a **resident relative** while **occupying** another **motor vehicle** owned by **you** and not insured under this policy;
2. sustained by any person operating a **covered auto** without **your** express or implied consent;
3. to any injured person, if such person's conduct contributed to his or her **bodily injury** under any of the following circumstances:
   a. causing **bodily injury** to himself or herself intentionally; or
   b. sustaining **bodily injury** while committing a felony;

8

4. sustained by any person, other than **you**, if such person is the owner of a **motor vehicle** with respect to which security is required under the Florida Motor Vehicle No-Fault Law, as amended;

5. sustained by any person, other than **you** or a **resident relative**, who is entitled to personal injury protection benefits from the insurer or owner of a **motor vehicle** which is not a **covered auto** under this policy;

6. sustained by any person while **occupying** a **motor vehicle** while located for use as a residence or premises; or

7. with respect to **work loss** if such **bodily injury** is sustained by **you** or a **resident relative** and a named insured has elected to exclude **work loss** under this Part II(A).

## EXTENDED PERSONAL INJURY PROTECTION COVERAGE

If **you** have purchased Extended Personal Injury Protection Coverage, then, as applied to **bodily injury** sustained by **you** or a **resident relative**, the definitions of "**disability benefits**" and "**medical benefits**" under this Part II(A) are deleted and replaced by the following:

"**Disability benefits**" means 80% of any **work loss** per **insured person** from inability to work proximately caused by the injury sustained by the **insured person. Disability benefits** also include all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those services that, but for the **bodily injury**, the **insured person** would have performed without income for the benefit of his or her household.

"**Medical benefits**" means all reasonable expenses incurred for **medically necessary** medical, surgical, x-ray, dental and rehabilitative services, including prosthetic devices and **medically necessary** ambulance, hospital, and nursing services. **Medical benefits** also include **medically necessary** remedial treatment and services recognized and permitted under the laws of the State of Florida for an injured person who relies upon spiritual means through prayer alone for healing, in accordance with his or her religious beliefs.

## LIMIT OF LIABILITY

The limit of liability shown on the **declarations page** for Personal Injury Protection is the most **we** will pay for each **insured person** injured in any one accident, regardless of the number of:

1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

9

Benefits received under any workers' compensation law shall be credited against the benefits provided under this Part II(A).

Any deductible elected by a named insured under Personal Injury Protection Coverage, and each person to whom the deductible applies, is shown on the **declarations page**. Any deductible that applies to the named insured shall apply to all persons listed as a named insured on the **declarations page** and any spouse of a named insured. When a deductible applies, the deductible will be applied to 100% of the expenses and losses covered under Personal Injury Protection Coverage. After the deductible is met, each **insured person** is eligible to receive up to $10,000 in total benefits under Personal Injury Protection Coverage. However, the deductible shall not be applied to reduce **death benefits**.

Personal Injury Protection Coverage is primary to the Medical Payments Coverage under Part II(B).

## OTHER INSURANCE

If there is other applicable personal injury protection coverage for the same injury to any one **insured person**, the most the **insured person** may recover is the maximum amount payable for personal injury protection benefits under the Florida Motor Vehicle No-Fault Law, as amended. If there is other applicable personal injury protection coverage, and **we** make a payment under this Part II(A), **we** are entitled to recover from each of the other insurers an equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

If an **insured person** sustains **bodily injury** while **occupying**, or through being struck by, a **motor vehicle** which is rented or leased, the personal injury protection coverage provided by the lessor's policy shall be primary unless the rental or lease agreement includes a provision in the form specified in Florida Statute §627.7263, as amended, stating that **your** liability insurance and personal injury protection insurance shall be primary.

## CONDITIONS

**Policy Period and Territory.** The coverage under this Part II(A) applies only to accidents which occur during the policy period:

1. in the State of Florida; and
2. with respect to **you** or a **resident relative**, while **occupying** a **covered auto** outside the State of Florida but within the United States of America, its territories or possessions, or Canada; and
3. with respect to **you**, while **occupying** a **motor vehicle** owned by a **resident relative**, and for which security is maintained under the Florida Motor Vehicle No-Fault Law, as amended, outside the State of Florida but within the United States of America, its territories or possessions, or Canada.

**Refusal to Submit to Medical Examination.** If a person making a claim under this Part II(A) unreasonably refuses to submit to a medical examination required by **us**, **we** shall not be liable for further payments under this Part II(A).

10

**Right of Reimbursement from Owner or Insurer of Commercial Motor Vehicle**. If **we** make a payment under this Part II(A) to any person sustaining **bodily injury** while **occupying** a commercial motor vehicle, as defined under the Florida Motor Vehicle No-Fault Law, as amended, or when struck by a commercial motor vehicle while not **occupying** a self-propelled vehicle, **we** shall have a right of reimbursement, to the extent of **our** payment, against the owner of the commercial motor vehicle or the owner's insurer.

**Unreasonable or Unnecessary Medical Benefits**. If an **insured person** incurs **medical benefits** that **we** deem to be unreasonable or unnecessary, **we** may refuse to pay for those **medical benefits** and contest them.

**We** may reduce any payment to a medical provider under this Part II(A) by any amounts **we** deem to be unreasonable **medical benefits**. Any reductions taken will not affect the rights of an **insured person** for coverage under this Part II(A). Whenever a medical provider agrees to a reduction of **medical benefits** charged, any co-payment owed by an **insured person** will also be reduced.

The **insured person** shall not be responsible for payment of any reductions applied by **us**. If a medical provider disputes an amount paid by **us**, **we** will be responsible for resolving such dispute. If a lawsuit is initiated against an **insured person** as a result of the reduction of a medical bill by **us**, **we** will provide the **insured person** with a legal defense by counsel of **our** choice, and pay any resulting judgment. The **insured person** must cooperate with **us** in the defense of any claim or lawsuit. If **we** ask an **insured person** to attend hearings or trials, **we** will pay up to $200 per day for loss of wages or salary. **We** will also pay other reasonable expenses incurred at **our** request.

## PART II(B) - MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay the reasonable expenses incurred for necessary **medical services** received within three years from the date of a **motor vehicle** accident because of **bodily injury**:
1. sustained by an **insured person**; and
2. caused by that **motor vehicle** accident.

**We**, or someone on **our** behalf, will determine:
1. whether the expenses for **medical services** are reasonable; and
2. whether the **medical services** are necessary.

There is no coverage under this Part II(B) for:
1. mileage costs for use of a personal vehicle; or
2. any interest charges.

11

**ADDITIONAL DEFINITIONS**

When used in this Part II(B):

1. "**Insured person**" means **you** or a **relative**:
   a. while **occupying** an **auto**; or
   b. when struck by a **motor vehicle** or a trailer while not **occupying** a self-propelled motorized vehicle.
2. "**Medical services**" means medical, surgical, dental, x-ray, ambulance, hospital, professional nursing, and funeral services, and includes the cost of eyeglasses, hearing aids, pharmaceuticals, orthopedics and prosthetic devices.
3. "**Motor vehicle**" means a land motor vehicle designed for use principally on public roads.

**EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II(B).**

Coverage under this Part II(B) will not apply to **bodily injury**:

1. sustained by any person while **occupying** a **covered auto** while it is being used to carry persons or property for compensation or a fee, including, but not limited to, pickup or delivery of magazines, newspapers, food, or any other products. This exclusion does not apply to shared-expense car pools;
2. arising out of an accident involving a vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, or an agent or employee of **you** or a **relative**, when using a **covered auto**;
3. to any person resulting from, or sustained during practice or preparation for:
   a. any prearranged or organized racing, stunting, speed, or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;
4. due to a nuclear reaction or radiation;
5. for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
6. for which the United States Government is liable under the Federal Tort Claims Act;
7. sustained by any person while **occupying** any vehicle or trailer while located for use as a residence or premises;
8. if workers' compensation benefits are available for the **bodily injury**;
9. sustained by any person while **occupying** or when struck by any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;
10. sustained by any person while **occupying** or when struck by any vehicle owned by a **relative** or furnished or available for the regular use of a **relative**, other

12

than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **you**;

11. to **you** or a **relative** while **occupying** any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

12. to any person while **occupying** a **covered auto** while leased or rented to others or given in exchange for any compensation. This exclusion does not apply to the operation of a **covered auto** by **you** or a **relative**;

13. caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

14. caused directly or indirectly by any accidental or intentional discharge, dispersal, or release of radioactive or nuclear material; or

15. caused by, or reasonably expected to result from, a criminal act or omission of an **insured person**. This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime. This exclusion does not apply to moving traffic violations.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Medical Payments Coverage is the most **we** will pay for each **insured person** injured in any one accident, regardless of the number of:

1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

Any amount payable to an **insured person** under this Part II(B) will be reduced by any amount paid or payable for the same expense under Part I - Liability To Others or Part III - Uninsured Motorist Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

Any amounts payable to an **insured person** under this Part II(B) shall be excess over any personal injury protection coverage paid or payable or which would be available but for the application of a deductible.

Any amounts payable to an **insured person** under this Part II(B) shall be available to pay the remaining 20% of the medical benefits not covered under Part II(A) - Personal Injury Protection Coverage. However, coverage under this Part II(B) shall not be available to pay any deductible for personal injury protection coverage.

## UNREASONABLE OR UNNECESSARY MEDICAL EXPENSES

If an **insured person** incurs expenses for **medical services** that we deem to be unreasonable or unnecessary, **we** may refuse to pay for those expenses and contest them.

If the medical service provider sues the **insured person** because **we** refuse to pay expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** will pay any resulting defense costs, and any resulting judgment against the **insured person,** subject to the limit of liability for this coverage. **We** will choose the counsel. **We** will also pay reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

The **insured person** may not sue **us** for expenses for **medical services we** deem to be unreasonable or unnecessary unless the **insured person** paid the entire disputed amount to the medical service provider or the medical service provider has initiated collection activity against the **insured person** for the unreasonable or unnecessary expenses.

## OTHER INSURANCE

If there is other applicable **auto** medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured person occupying** a vehicle or trailer, other than a **covered auto,** will be excess over any other **auto** insurance providing payments for **medical services.**

## PART III - UNINSURED MOTORIST COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for damages, other than punitive or exemplary damages, that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury:**
1. sustained by an **insured person;**
2. caused by an accident; and
3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle.**

We will pay under this Part III only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payment of judgments or settlements.

14

**We** will not pay for damages consisting of pain, suffering, mental anguish, or inconvenience unless the injury or disease consists in whole or in part of:

1. significant and permanent loss of an important bodily function;
2. permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;
3. significant and permanent scarring or disfigurement; or
4. death;

as described in section 626.737(2) of the Florida Motor Vehicle No-Fault Law, as amended.

An **insured person** must notify **us** in writing by certified mail at least 30 days before entering into any settlement with the owner or operator of an **uninsured motor vehicle**, or that person's liability insurer. In order to preserve **our** right of subrogation, **we** may elect to pay any sum offered in settlement by, or on behalf of, the owner or operator of the **uninsured motor vehicle**. If **we** do this, **you** agree to assign to **us** all rights that **you** have against the owner or operator of the **uninsured motor vehicle**.

Any judgment or settlement for damages against an owner or operator of an **uninsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

## ADDITIONAL DEFINITIONS

When used in this Part III:

1. **"Insured person"** means:
   a. **you** or a **relative**;
   b. any person while operating a **covered auto** with the permission of **you** or a **relative**;
   c. any person **occupying**, but not operating, a **covered auto**; and
   d. any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a, b, or c above.
2. **"Uninsured motor vehicle"** means a land motor vehicle or trailer of any type:
   a. to which no bodily injury liability bond or policy applies at the time of the accident;
   b. to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:
      (i) denies coverage; or
      (ii) is or becomes insolvent;
   c. to which a bodily injury liability bond or policy applies at the time of the accident, but its limit of liability for bodily injury is less than the bodily injury damages an **insured person** is legally entitled to recover; or
   d. that is a hit-and-run vehicle whose owner or operator cannot be identified and which causes an **accident**, with or without physical contact, resulting in **bodily injury** to an **insured person**, provided that the **insured person**, or someone on his or her behalf, reports the accident to the police or civil authority within 24 hours or as soon as practicable after the accident.

15

An "**uninsured motor vehicle**" does not include any vehicle or equipment:

a. owned by **you** or a **relative** or furnished or available for the regular use of **you** or a **relative**. However, this shall not apply to a **covered auto** when coverage is denied under Part I - Liability To Others of this policy because of the exclusion of **bodily injury** to **you** or a **relative**, if the **bodily injury** results from operation of the **covered auto** by a person other than **you** or a **relative**;

b. operated on rails or crawler treads;

c. designed mainly for use off public roads, while not on public roads;

d. while located for use as a residence or premises; or

e. that is a **covered auto**. However, this shall not apply when coverage is denied under Part I - Liability To Others of this policy because of the exclusion of **bodily injury** to **you** or a **relative**, if the **bodily injury** results from operation of the **covered auto** by a person other than **you** or a **relative**.

## EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.

Coverage under this Part III will not apply:

1. to **bodily injury** sustained by any person while using or **occupying**:
   a. a **covered auto** while being used to carry persons or property for compensation or a fee, including, but not limited to, pickup or delivery of magazines, newspapers, food, or any other products. This exclusion does not apply to shared-expense car pools; or
   b. a motor vehicle that is owned by **you** or a **relative**. This exclusion does not apply:
      (i) to a **covered auto** that is insured under this Part III; or
      (ii) if **you** have elected stacked uninsured motorist coverage;
2. to **bodily injury** sustained by **you** or a **relative** while using any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;
3. directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
   a. workers' compensation law; or
   b. disability benefits law;
4. to any punitive or exemplary damages; or
5. to **bodily injury** sustained by any person if that person or the legal representative of that person settles without **our** written consent.

## LIMITS OF LIABILITY

1. If **you** have elected stacked uninsured motorist coverage, the following limits of liability shall apply:

   If **your declarations** page shows a split limit:
   a. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person. When the limits of two or more

16

      **covered autos** are stacked, the most **we** will pay for all damages due to **bodily injury** to one person is the sum of the "each person" limits for each **covered auto** shown on the **declarations page**; and

b.   subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident. When the limits of two or more **covered autos** are stacked, the most **we** will pay for all damages due to **bodily injury** to two or more persons in any one accident is the sum of the "each accident" limits for each **covered auto** shown on the **declarations page**.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. When the limits of two or more **covered autos** are stacked, the most **we** will pay for the total of all damages resulting from any one accident is the sum of the combined single limits for each **covered auto** shown on the **declarations page**.

2.   If **you** have elected non-stacked uninsured motorist coverage, the following limits of liability shall apply:

If **your declarations page** shows a split limit:

a.   the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person; and

b.   subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this total limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

The limit of liability shown on the **declarations page** for Uninsured Motorist Coverage is the most **we** will pay regardless of the number of:

a.   claims made;
b.   **covered autos**;
c.   **insured persons**;
d.   lawsuits brought;
e.   vehicles involved in the accident; or
f.   premiums paid.

3.   Whether **you** have elected stacked uninsured motorist coverage or non-stacked uninsured motorist coverage, the following provisions shall apply:

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish

resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death, if recoverable under the applicable law.

In determining the amount payable under this Part III, the amount of damages that an **insured person** is entitled to recover for **bodily injury** will be reduced by:

a.   all sums paid because of **bodily injury** by any persons or organizations that may be legally responsible;

b.   all sums paid or payable under Part I - Liability To Others;

c.   all sums paid or payable under Part II(A) - Personal Injury Protection Coverage or Part II(B) - Medical Payments Coverage;

d.   all sums paid or payable because of **bodily injury** under any of the following or similar laws:

   (i)   workers' compensation law; or

   (ii)  disability benefits law;

e.   all sums paid or payable as personal injury protection benefits; and

f.   the amount of the limits of the uninsured motorist's liability policy.

No one will be entitled to duplicate payments for the same elements of damages.

## OTHER INSURANCE

1.   If **you** have elected stacked uninsured motorist coverage, the following shall apply:

If there is other uninsured motorist coverage that applies to the accident on a primary basis, **we** will pay only **our** proportionate share of the damages.

Any insurance **we** provide with respect to a vehicle that is not a **covered auto** will be excess over any other uninsured motorist coverage.

2.   If **you** have elected non-stacked uninsured motorist coverage, the following shall apply:

If there is other uninsured motorist coverage that applies to the accident on a primary basis, the total benefits payable to any one person will not exceed the maximum benefits payable by the policy with the highest limit for uninsured motorist coverage. **We** will pay only **our** proportionate share of the damages. This applies no matter how many autos or auto policies may be involved whether written by **us** or another company.

If an **insured person** sustains **bodily injury** while **occupying** a motor vehicle, other than a **covered auto**, the **insured person** may elect to receive excess uninsured motorist benefits under only one policy of insurance under which the **insured person** is an insured. If the **insured person** elects to receive excess uninsured motorist benefits under a policy of insurance other than this policy, **we**

18

will not pay any uninsured motorist benefits due to **bodily injury** to the **insured person**.

If an **insured person** sustains **bodily injury** while not **occupying** a motor vehicle, the **insured person** may elect to receive uninsured motorist benefits under only one policy of insurance under which the **insured person** is an insured. If the **insured person** elects to receive uninsured motorist benefits under a policy of insurance other than this policy, **we** will not pay any uninsured motorist benefits due to **bodily injury** to the **insured person**.

### TRUST AGREEMENT

If an **insured person** elects to receive or receives uninsured motorist benefits under this policy and subsequently elects to receive or receives uninsured motorist benefits under a policy of insurance other than this policy, that **insured person** will hold the amount of those benefits in trust pending a determination regarding whether **we** are entitled to reimbursement of all or a portion of **our** uninsured motorist benefit payments.

## PART IV - DAMAGE TO A VEHICLE

### INSURING AGREEMENT - COLLISION COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct, and accidental loss to a:
1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;
and its **custom parts or equipment**, resulting from **collision**.

In addition, **we** will pay the reasonable cost to replace any child safety seat damaged in an accident to which this coverage applies.

### INSURING AGREEMENT - COMPREHENSIVE COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct, and accidental loss to a:
1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;
and its **custom parts or equipment**, that is not caused by **collision**.

A loss not caused by **collision** includes:
1. contact with an animal (including a bird);
2. explosion or earthquake;
3. fire;
4. malicious mischief or vandalism;

19

5. missiles or falling objects;
6. riot or civil commotion;
7. theft or larceny;
8. windstorm, hail, water, or flood; or
9. breakage of glass not caused by **collision**.

In addition, **we** will pay for:
1. reasonable transportation expenses incurred by **you** if a **covered auto** is stolen; and
2. loss of use damages that **you** are legally liable to pay if a **non-owned auto** is stolen.

A combined maximum of $900, not exceeding $30 per day, will apply to these additional benefits. The additional benefit for transportation expenses will not apply if **you** purchased Rental Reimbursement Coverage for the stolen **covered auto.**

Coverage for transportation expenses and loss of use damages begins 48 hours after **you** report the theft to **us** and ends the earliest of:
1. when the **auto** has been recovered and returned to **you** or its owner;
2. when the **auto** has been recovered and repaired;
3. when the **auto** has been replaced; or
4. 72 hours after **we** settle the loss if the **auto** is deemed by **us** to be a total loss.

**We** must receive written proof of transportation expenses and loss of use damages.

### INSURING AGREEMENT - FULL COMPREHENSIVE WINDOW GLASS COVERAGE

If **you** pay the premium for Comprehensive Coverage, **we** will pay for sudden, direct, and accidental loss to a windshield on a **covered vehicle** that is not caused by a **collision**, without applying a deductible.

### INSURING AGREEMENT - ADDITIONAL CUSTOM PARTS OR EQUIPMENT COVERAGE

**We** will pay for sudden, direct, and accidental loss to **custom parts or equipment** on a **covered auto** for which this coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages. This coverage applies in addition to any coverage automatically provided for **custom parts or equipment** under Comprehensive Coverage or Collision Coverage.

### INSURING AGREEMENT - RENTAL REIMBURSEMENT COVERAGE

We will reimburse rental charges incurred when **you** rent an **auto** from a rental agency or auto repair shop due to a loss to a **covered auto** for which Rental Re-

20

imbursement Coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

Additional fees or charges for insurance, damage waivers, optional equipment, fuel, or accessories are not covered.

This coverage is limited to the each day limit shown on the **declarations page** for a maximum of 30 days.

If Rental Reimbursement Coverage applies, no other coverage under this policy for rental expenses will apply.

Rental charges will be reimbursed beginning:
1. when the **covered auto** cannot be driven due to a loss; or
2. if the **covered auto** can be driven, when **you** deliver the **covered auto** to an auto repair shop or one of **our** Claims Service Centers for repairs due to the loss;

and ending the earliest of:
1. when the **covered auto** has been returned to **you**;
2. when the **covered auto** has been repaired;
3. when the **covered auto** has been replaced;
4. 72 hours after **we** settle the loss if the **covered auto** is deemed by **us** to be a total loss; or
5. when **you** incur 30 days worth of rental charges.

**You** must provide **us** written proof of **your** rental charges to be reimbursed.

### INSURING AGREEMENT - LOAN/LEASE PAYOFF COVERAGE

If **you** pay the premium for this coverage, and the **covered auto** for which this coverage was purchased is deemed by **us** to be a total loss, **we** will pay, in addition to any amounts otherwise payable under this Part IV, the difference between:
1. the actual cash value of the **covered auto** at the time of the total loss; and
2. any greater amount the owner of the **covered auto** is legally obligated to pay under a written loan or lease agreement to which the **covered auto** is subject at the time of the total loss, reduced by:
   a. unpaid finance charges or refunds due to the owner for such charges;
   b. excess mileage charges or charges for wear and tear;
   c. charges for extended warranties or refunds due to the owner for extended warranties;
   d. charges for credit insurance or refunds due to the owner for credit insurance;
   e. past due payments and charges for past due payments; and
   f. collection or repossession expenses.

However, **our** payment under this coverage shall not exceed the limit of liability shown on the **declarations page**. The limit of liability is a percentage of the actual cash value of the **covered auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

## ADDITIONAL DEFINITIONS

When used in this Part IV:
1. "**Collision**" means the upset of a vehicle or its impact with another vehicle or object.
2. "**Custom parts or equipment**" means equipment, devices, accessories, enhancements, and changes, other than those that are offered by the manufacturer specifically for that **auto** model, or that are installed by the **auto** dealership as part of the original sale of a new **auto**, that:
   a. are permanently installed or attached; and
   b. alter the appearance or performance of an **auto**.
3. "**Mechanical parts**" means operational parts on a vehicle that wear out over time or have a finite useful life or duration typically shorter than the life of the vehicle as a whole. **Mechanical parts** do not include external crash parts, wheels, paint, or windshields and other glass.
4. "**Non-owned auto**" means an **auto** that is not owned by or furnished or available for the regular use of **you** or a **relative** while in the custody of or being operated by **you** or a **relative** with the permission of the owner of the **auto** or the person in lawful possession of the **auto**.

## EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.

Coverage under this Part IV will not apply for loss:
1. to any vehicle while being used to carry persons or property for compensation or a fee, including, but not limited to, pickup or delivery of magazines, newspapers, food, or any other products. This exclusion does not apply to shared-expense car pools;
2. to a **non-owned auto** while being maintained or used by a person while employed or engaged in any **auto business**;
3. to any vehicle resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed, or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;
4. to any vehicle for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
5. to any vehicle caused by an intentional act committed by or at the direction of **you**, a **relative**, or the owner of a **non-owned auto** even if the actual dam-

age is different than that which was intended or expected. This exclusion pre-cludes coverage for any person insured by this policy regardless of whether the person seeking coverage participated in the intentional act;

6.   to a **covered auto** while it is leased or rented to others or given in exchange for compensation. This exclusion does not apply to the operation of a **cov-ered auto** by **you** or a **relative**;

7.   due to destruction or confiscation by governmental or civil authorities of any vehicle because **you** or any **relative** engaged in illegal activities;

8.   to any vehicle that is due and confined to:
     a.   wear and tear;
     b.   freezing;
     c.   mechanical, electrical, or electronic breakdown or failure; or
     d.   road damage to tires.
     This exclusion does not apply if the damage results from the theft of a vehicle;

9.   to portable equipment, devices, accessories, and any other personal effects that are not permanently installed. This includes, but is not limited to:
     a.   tapes, compact discs, cassettes, DVDs, and other recording or recorded media;
     b.   any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, DVDs, or other recording or recorded media;
     c.   any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions; and
     d.   CB radios, telephones, two-way mobile radios, DVD players, personal computers, personal digital assistants, or televisions;

10.  to any vehicle caused directly or indirectly by:
     a.   war (declared or undeclared) or civil war;
     b.   warlike action by any military force of any government, sovereign or other authority using military personnel or agents. This includes any action tak-en to hinder or defend against an actual or expected attack; or
     c.   insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

11.  to any vehicle caused directly or indirectly by any accidental or intentional discharge, dispersal, or release of radioactive or nuclear material; or

12.  to any vehicle caused by, or reasonably expected to result from, a criminal act or omission of **you**, a **relative**, or the owner of a **non-owned auto**. This exclusion applies regardless of whether **you**, the **relative**, or the owner of the **non-owned auto** is actually charged with, or convicted of, a crime. This exclusion precludes coverage for any person insured by this policy regardless of whether the person seeking coverage participated in the criminal act or omission. This exclusion does not apply to moving traffic violations.

## LIMITS OF LIABILITY

1.   The limit of liability for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** is the lowest of:
     a.   the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;

    b.  the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;

    c.  the amount necessary to repair the damaged property to its pre-loss physical condition reduced by the applicable deductible; or

    d.  the Stated Amount shown on the **declarations page** for that **covered auto;**

However, the most **we** will pay for loss to:

    a.  **custom parts or equipment** is $1,000 unless **you** purchased Additional Custom Parts or Equipment Coverage ("ACPE"). If **you** purchased ACPE, the most **we** will pay is $1,000 plus the amount of ACPE **you** purchased.

    b.  a **trailer** is the limit of liability shown on the **declarations page** for that **trailer.** If the **trailer** is not shown on the **declarations page,** the limit of liability is $500.

2.  Payments for loss to a **covered auto, non-owned auto,** or **custom parts or equipment** are subject to the following provisions:

    a.  If coverage applies to a **non-owned auto, we** will provide the broadest coverage applicable to any **covered auto** shown on the **declarations page.**

    b.  If **you** have elected a Stated Amount for a **covered auto,** the Stated Amount is the most **we** will pay for all loss to that **covered auto,** including its **custom parts or equipment.**

    c.  Coverage for **custom parts or equipment** will not cause **our** limit of liability for loss to an **auto** under this Part IV to be increased to an amount in excess of the actual cash value of the **auto,** including its **custom parts or equipment.**

    d.  In determining the amount necessary to repair damaged property to its pre-loss physical condition, the amount to be paid by **us:**

        (i)  will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired and the cost of repair or replacement parts and equipment, as reasonably determined by **us;** and

        (ii)  will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

            (a)  original manufacturer parts or equipment; and

            (b)  nonoriginal manufacturer parts or equipment.

    e.  To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1, the total cost of necessary repair or replacement may be reduced by unrepaired prior damage. Unrepaired prior damage includes broken, cracked, or missing parts; rust; dents; scrapes; gouges; and peeling paint. The reduction for unrepaired prior damage is the cost of labor, parts, and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as a result of the repair or replacement of property damaged in the loss.

f.  To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1, an adjustment may be made for betterment or depreciation and physical condition on:

(i)   batteries;

(ii)  tires;

(iii) engines and transmissions, if the engine has greater than 80,000 miles; and

(iv) any other **mechanical parts** that are nonfunctioning or inoperative. **We** will not make an adjustment for the labor costs associated with the replacement or repair of these parts.

g.  The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

3.  No deductible will apply to a loss to window glass when the glass is repaired instead of replaced.

4.  Duplicate recovery for the same elements of damages is not permitted.

## PAYMENT OF LOSS

**We** may, at **our** option:

1.  pay for the loss in money; or

2.  repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

## NO BENEFIT TO BAILEE

Coverage under this Part IV will not directly or indirectly benefit any carrier or other bailee for hire.

## LOSS PAYABLE CLAUSE

Payment under this Part IV for a loss to a **covered auto** will be made according to **your** interest and the interest of any lienholder shown on the **declarations page** or designated by **you**. At **our** option, payment may be made to both jointly, or to either separately. Either way, **we** will protect the interest of both. However, if the **covered auto** is not a total loss, **we** may make payment to **you** and the repairer of the **auto**.

Protection of the lienholder's financial interest will not be affected by any act or omission by any person entitled to coverage under this policy. However, protection under this clause does not apply:

1.  in any case of conversion, embezzlement, secretion, or willful damaging or destruction, of the **covered auto** by or at the direction of **you**, a **relative**, or the owner of the **covered auto**; or

2.   to any loss caused by, or reasonably expected to result from, a criminal act or omission of **you**, a **relative**, or the owner of the **covered auto**. This applies regardless of whether **you**, the **relative**, or the owner of the **covered auto** is actually charged with, or convicted of, a crime. This does not apply to moving traffic violations.

If this policy is cancelled, nonrenewed, or voided, the interest of any lienholder under this agreement will also terminate.

When **we** make payment to a lienholder for loss under this policy, **we** will be subrogated to the rights of the party **we** pay, to the extent of **our** payment. When **we** pay a lienholder for a loss for which **you** are not covered, **we** are entitled to the lienholder's right of recovery against **you** to the extent of **our** payment. **Our** right to subrogation will not impair the lienholder's right to recover the full amount of its claim.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a **non-owned auto**, or **trailer** not shown on the **declarations page**, will be excess over any other collectible source of recovery including, but not limited to:
1.   any coverage provided by the owner of the **non-owned auto** or **trailer**;
2.   any other applicable physical damage insurance; and
3.   any other source of recovery applicable to the loss.

## APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** or **you** may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent and impartial appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified and impartial umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

## PART V - ROADSIDE ASSISTANCE COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for **our** authorized service representative to provide the following services when necessary due to a **covered emergency**:
1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement.

If a **covered disabled auto** is towed to any place other than the nearest qualified repair facility, **you** will be responsible for any additional charges incurred.

### ADDITIONAL DEFINITIONS

When used in this Part V:
1. "**Covered disabled auto**" means a **covered auto** for which this coverage has been purchased that sustains a **covered emergency.**
2. "**Covered emergency**" means a disablement that is a result of:
   a. mechanical or electrical breakdown;
   b. battery failure;
   c. insufficient supply of fuel, oil, water, or other fluid;
   d. flat tire;
   e. lock-out; or
   f. entrapment in snow, mud, water, or sand, within 100 feet of a road or highway.

### EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART V.

Coverage under this Part V will not apply to:
1. the cost of purchasing parts, fluid, lubricants, fuel, or replacement keys, or the labor to make replacement keys;
2. installation of products or material not related to the disablement;
3. labor not related to the disablement;
4. labor on a **covered disabled auto** for any time period in excess of 60 minutes per disablement;
5. towing or storage related to impoundment, abandonment, illegal parking, or other violations of law;
6. assistance with jacks, levelers, airbags, or awnings;
7. towing from a service station, garage, or repair shop;
8. labor or repair work performed at a service station, garage, or repair shop;
9. auto storage charges;
10. a second service call or tow for a single disablement;

11. disablement that occurs on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction, weather, or earth movement;

12. mounting or removing of snow tires or chains;

13. tire repair;

14. repeated service calls for a **covered disabled auto** in need of routine maintenance or repair;

15. disablement that results from an intentional or willful act or action by **you**, a **relative,** or the operator of a **covered disabled auto**, with the intent of causing such disablement; or

16. a trailer.

## UNAUTHORIZED SERVICE PROVIDER

When service is rendered by a provider in the business of providing roadside assistance and towing services, other than one of **our** authorized service representatives, **we** will pay only reasonable charges, as determined by **us**, for:

1. towing of a **covered disabled auto** to the nearest qualified repair facility; and

2. labor on a **covered disabled auto** at the place of disablement;

which is necessary due to a **covered emergency**.

## OTHER INSURANCE

Any coverage provided under this Part V for service rendered by an unauthorized service provider will be excess over any other collectible insurance or towing protection coverage.

## PART VI - DUTIES IN CASE OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each accident or loss even if **you** or the person seeking coverage is not at fault. **You** or the person seeking coverage must provide **us** with all accident/loss information including time, place, and how the accident or loss happened. **You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the accident, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable.

A person seeking coverage must:

1. cooperate with **us** in any matter concerning a claim or lawsuit;

2. provide any written proof of loss **we** may reasonably require;

3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of

28

**you** or any other person claiming coverage, and answer all reasonable questions **we** may ask and provide any documents, records, or other tangible items that **we** request, when, where, and as often as **we** may reasonably require;

4. promptly call to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to the claim or suit;
5. attend hearings and trials as **we** require;
6. take reasonable steps after a loss to protect the **covered auto**, or any other vehicle for which coverage is sought, from further loss. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
7. allow **us** to have the damaged **covered auto**, or any other damaged vehicle for which coverage is sought, inspected and appraised before its repair or disposal;
8. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require; and
9. authorize **us** to obtain medical and other records.

## PART VII - GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

This policy applies only to accidents and losses occurring during the policy period shown on the **declarations page** and that occur within a state, territory, or possession of the United States of America, or a province or territory of Canada, or while a **covered auto** or **trailer** shown on the **declarations page** is being transported between their ports.

### CHANGES

This policy contract, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, and all endorsements to this policy issued by **us**, contain all the agreements between **you** and **us**. Subject to the following, the terms of this policy may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and to notify **us** if it changes during the policy period. If this information is incorrect, incomplete, or changes during the policy period, **you** agree that **we** may adjust **your** premium accordingly. Changes that may result in a premium adjustment are contained in **our** rates and rules. These include, but are not limited to, **you** or a **relative** obtaining a driver's license or operator's permit, or changes in:

1. the number, type, or use classification of **covered autos**;
2. operators using **covered autos**;
3. an operator's marital status;
4. the place of principal garaging of any **covered auto**;

29

5. coverage, deductibles, or limits of liability; or
6. rating territory or discount eligibility.

The coverage provided in **your** policy may be changed only by the issuance of a new policy or an endorsement by **us**. However, if during the policy period **we** broaden any coverage afforded under the current edition of **your** policy without additional premium charge, that change will automatically apply to **your** policy as of the date the coverage change is implemented in **your** state.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

## DUTY TO REPORT CHANGES

**You** must promptly notify **us** when:
1. **your** mailing or residence address changes;
2. the principal garaging address for a **covered auto** or a **trailer** shown on the **declarations page** changes;
3. there is a change with respect to the residents in **your** household or the persons who regularly operate a **covered auto**;
4. an operator's marital status changes; or
5. **you** or a **relative** obtain a driver's license or operator's permit.

## SETTLEMENT OF CLAIMS

**We** may use estimating, appraisal, or injury evaluation systems to assist **us** in adjusting claims under this policy and to assist **us** in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

## TERMS OF POLICY CONFORMED TO STATUTES

If any provision of this policy fails to conform to the statutes of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** residence.

## TRANSFER

This policy may not be transferred to another person without **our** written consent. However, if a named insured shown on the **declarations page** dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

## FRAUD OR MISREPRESENTATION

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an accident or loss, if **you**:

1. made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. concealed or misrepresented any material fact or circumstance; or
3. engaged in fraudulent conduct;

at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

**We** may deny coverage for an accident or loss if **you** or a person seeking coverage has knowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

## PAYMENT OF PREMIUM AND FEES

If **your** initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned on payment to **us** by the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at **our** option, be deemed void from its inception, unless the nonpayment is cured within the earlier of:

1. 5 days after actual notice by certified mail is received by **you**; or
2. 15 days after notice is sent to **you** by certified or registered mail.

If **we** deem the policy void from its inception, **we** will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by **us** to present the remittance for payment more than once shall not affect **our** right to void this policy.

In addition to premium, fees may be charged on **your** policy. **We** may charge fees for installment payments, late payments, and other transactions. Payments made on **your** policy will be applied first to fees, then to premium due.

If a required premium is not paid when due, or by the end of any grace period if **we** agree to grant a grace period, this policy will lapse as of the due date of the overdue premium. If **we** offer to renew or continue this policy, and **you** fail to pay the required premium when due, this policy will automatically terminate at the end of the policy period unless **we** elect to reinstate the policy without a lapse. **Your** failure to pay the required renewal premium means that **you** have declined **our** offer.

31

**CANCELLATION**

**You** may cancel this policy during the policy period by calling or writing **us** and stating the future date **you** wish the cancellation to be effective. However, if **your** policy includes personal injury protection and property damage liability, **you** may not cancel **your** policy during the first two months immediately following the effective date of the initial policy period except:
1. upon total destruction of the **covered auto;**
2. upon transfer of ownership of the **covered auto;**
3. after the purchase of another policy or binder covering the **covered auto;** or
4. as provided in the Rate Increases provision under this Part VII.

**We** may cancel this policy during the policy period by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records.

**We** will give at least 10 days notice of cancellation if the policy is cancelled for nonpayment of premium.

**We** will give at least 45 days notice of cancellation in all other cases.

During the first 60 days immediately following the effective date of the initial policy period, **we** may cancel **your** policy for nonpayment of premium if the reason for the cancellation is the issuance of a check for the premium that is dishonored for any reason. If **your** policy has been in effect for less than 60 days, **we** may also cancel for reasons other than nonpayment of premium.

After this policy is in effect for 60 days, or if this is a renewal or continuation policy, **we** may cancel only for one or more of the following reasons:
1. nonpayment of premium;
2. material misrepresentation or fraud by **you** with respect to any material fact in the procurement or renewal of this policy;
3. material misrepresentation or fraud in the submission of any claim under this policy; or
4. the driver's license or motor vehicle registration of the named insured or of any other operator who either resides in the same household or customarily operates a **covered auto** has been under suspension or revocation during the initial policy period or the 180 days immediately preceding its effective date, or if the policy is a renewal, during the renewal policy period.

United States postal proof of mailing or certified or registered mailing will be sufficient proof of notice. If this policy is cancelled, coverage will not be provided as of the effective date and time shown in the notice of cancellation. For purposes

32

of cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverages for all persons and all vehicles.

## CANCELLATION REFUND

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

If **we** cancel this policy or if the cancellation is for nonpayment of premium, any refund due will be computed on a daily pro-rata basis.

If **you** request cancellation during the initial policy period, any refund due will be computed on a 90% of a daily pro-rata basis. This is a daily, accelerated method of calculating short-rate earned premium on cancellations. Earned premium is calculated on a daily basis. Once **your** policy renews, any refund due will be computed on a daily pro-rata basis.

## RATE INCREASES

If **we** determine that, in accordance with **our** rate filings and the applicable laws of Florida, **you** have been charged a premium that is incorrect for the coverage set forth in **your** application, **we** will provide notice to **you** of the amount of additional premium due and that **you** have the following options:
1. **you** have a period of 10 days, or longer if specified by **us**, from receipt of the notice to pay the additional amount of premium due and maintain **your** policy in force;
2. **you** have a period of 10 days, or longer if specified by **us**, from receipt of the notice to cancel the policy and demand a refund of any unearned premiums; or
3. if **you** fail to timely respond to the notice, **we** shall cancel the policy and return any unearned premium to **you**. The date of the cancellation will be stated in the notice and will not be less than 14 days after the date of the notice.

Any refund due under this provision will be calculated on a daily pro-rata basis.

## NONCANCELABLE POLICY

If this policy is issued for the purpose of providing proof of compliance with Florida Statute §627.7275(2)(a), as amended, in order to reinstate the named insured's driving privileges following suspension or revocation due to failure to maintain the required security, the following provisions shall apply when **our** underwriting is completed, or once this policy is in effect for 30 days, whichever comes first:
1. the policy may not be cancelled for any reason for the remainder of the policy period;
2. no refund of premium shall be allowed; and

33

3. the policy may not be changed during the policy period for any reason that materially increases the risk, including, but not limited to, changing to a higher risk vehicle, adding vehicles, adding new drivers, or moving to a different rating territory. If there is a material change in the risk **we** have insured against, **you** must obtain a replacement noncancelable policy.

## NONRENEWAL

If neither **we** nor one of **our** affiliates offers to renew or continue this policy, **we** will mail notice of nonrenewal to the named insured shown on the **declarations page** at the last known address appearing in **our** records. United States postal proof of mailing or certified or registered mailing will be sufficient proof of notice. Notice will be mailed at least 45 days before the end of the policy period.

## AUTOMATIC TERMINATION

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on a **covered auto**, any similar insurance provided by this policy will terminate as to that **covered auto** on the effective date of the other insurance.

If a **covered auto** is sold or transferred to someone other than **you** or a **relative**, any insurance provided by this policy will terminate as to that **covered auto** on the effective date of the sale or transfer.

## LEGAL ACTION AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy.

**We** may not be sued for payment under Part I - Liability To Others until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the insured person, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an insured person.

If **we** retain salvage, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

## OUR RIGHTS TO RECOVER PAYMENT

**We** are entitled to the rights of recovery that the insured person to whom payment was made has against another, to the extent of **our** payment. That insured person may be required to sign documents related to the recovery and must do whatever else **we** require to help **us** exercise those recovery rights, and do noth-

ing after an accident or loss to prejudice those rights. If necessary to protect **our** subrogation rights following an accident, the insured person must file suit against a liable person or organization within the time period specified by the applicable statute of limitations.

However, **we** may not assert rights of recovery against the owner or operator of an "uninsured motor vehicle," as defined in Part III - Uninsured Motorist Coverage, if the insured person under Part III provides **us** with written notice by certified or registered mail at least 30 days prior to entering into a settlement that an offer of settlement has been made by, or on behalf of, the owner or operator of the "uninsured motor vehicle" and **we** do not elect to pay to the insured person an amount equal to the amount offered in full settlement by, or on behalf of, the owner or operator of the "uninsured motor vehicle."

When an insured person has been paid by **us** and also recovers from another, the amount recovered will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment. If **we** are not reimbursed, **we** may pursue recovery of that amount directly against that insured person. However, this shall not apply to any payment made by **us** under Part II(A) - Personal Injury Protection Coverage of this policy for personal injury protection benefits required under the Florida Motor Vehicle No-Fault Law, as amended.

If an insured person recovers from another without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist.

If **we** elect to exercise **our** rights of recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy unless **we** are specifically instructed by that person not to pursue the deductible. **We** have no obligation to pursue recovery against another for any loss not covered by this policy.

**We** reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. **We** reserve the right to incur reasonable expenses and attorney fees in pursuit of the recovery.

If the total recovery is less than the total of **our** payment and the deductible, **we** will reduce reimbursement of the deductible based on the proportion that the actual recovery bears to the total of **our** payment and the deductible. Reimbursement of the deductible will also be reduced by a proportionate share of collection expenses and attorney fees incurred in connection with these recovery efforts.

These provisions will be applied in accordance with state law.

### JOINT AND INDIVIDUAL INTERESTS

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy.

35

## BANKRUPTCY

The bankruptcy or insolvency of an insured person will not relieve **us** of any obligations under this policy.

## MEDIATION

Either **we** or **you** may request mediation of a claim for:
1. **bodily injury** in the amount of $10,000 or less under Part II(A) - Personal Injury Protection Coverage, Part II(B) - Medical Payments Coverage, or Part III - Uninsured Motorist Coverage of this policy; or
2. **property damage** under Part IV - Damage To A Vehicle.

A demand for mediation shall be filed with the Florida Department of Financial Services on a form which may be obtained from the Department. The demand must state why mediation is being requested and the issue in dispute.

Only one mediation may be requested for each claim unless the parties agree to further mediation. The mediator shall be selected by the Department at random. Each party may reject one mediator selected by the Department, either before or after the other party has rejected a mediator. The mediation shall be conducted informally, and may be held by telephone if agreed to by the mediator and the parties. The date, time, and place of the mediation conference shall be set by the mediator and shall be held no later than 45 days following the demand for mediation. All persons participating in the mediation must have the authority to make a binding decision. Disclosures and statements made during mediation shall not be deemed admissions in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. The costs of mediation shall be shared equally by the parties unless the mediator determines that one party has not mediated in good faith. Any lawsuit regarding a mediated dispute must be filed as required under the "Limitations of Actions" statutes or within 60 days after the conclusion of the mediation process, whichever is later.



*9610A FL 1005*

Policy number: &lt;xxxxxxx-x&gt;
&lt;xxxxxx xxxxxx&gt;
&lt;xxxxxx xxxxxxx&gt;
Page &lt;x&gt; of &lt;x&gt;

## Pet Injury Coverage Endorsement

**Your** policy is amended as follows:

If **you** have purchased Collision coverage for at least one **covered auto** under **your** policy, Pet Injury coverage is added to Part IV – Damage To A Vehicle.

### INSURING AGREEMENT – PET INJURY COVERAGE

If **your pet** sustains injury or death while inside a **covered auto** or **non-owned auto** at the time of a loss covered under Collision or Comprehensive coverage, **we** will provide:

1. up to $1,000 for reasonable and customary veterinary fees incurred by **you** or a **relative** if **your pet** is injured in, or as a direct result of, the covered loss; or

2. a $1,000 death benefit if **your pet** dies in, or as a direct result of, the covered loss, less any payment **we** made toward veterinary expenses for **your pet**.

In the event of a covered loss due to the theft of a **covered auto** or **non-owned auto**, **we** will provide the death benefit provided **your pet** is inside that auto at the time of the theft and **your pet** is not recovered.

### ADDITIONAL DEFINITION

The following definition applies to this coverage:

**"Your pet"** means any dog or cat owned by **you** or a **relative**.

### LIMITS OF LIABILITY

The following additional Limits of Liability apply to Pet Injury coverage:

1. The most **we** will pay for all damages in any one loss is a total of $1,000 regardless of the number of dogs or cats involved.

2. If **your pet** dies in, or as a direct result of, a covered loss, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for **your pet**.

3. No deductible shall apply to this coverage.

**All other terms, limits and provisions of this policy remain unchanged.**

Form 2538 (10/08)

Policy Number: <Policy Number>
<Named Insd Full Name>
< * Second Named Insd Full Name>
Page < 1X> of < 2X>

**Personal Injury Protection Coverage Endorsement**

1. Effective January 1, 2013, the "Unreasonable or Unnecessary Medical Benefits" provision in Part II(A), and in any endorsements to Part II(A), is deleted and replaced by the following:

### UNREASONABLE OR UNNECESSARY MEDICAL BENEFITS

If an **insured person** incurs **medical benefits** that we deem to be unreasonable or unnecessary, **we** may refuse to pay for those **medical benefits** and contest them.

We will determine to be unreasonable any charges incurred that exceed the maximum charges set forth in Section 627.736 (5)(a)(1) (a through f) of the Florida Motor Vehicle No-Fault Law, as amended. Pursuant to Florida law, **we** will limit reimbursement to, and pay no more than, 80 percent of the following schedule of maximum charges:

 a. for emergency transport and treatment by providers licensed under Chapter 401 of the Florida Statutes, 200 percent of Medicare;

 b. for emergency services and care provided by a hospital licensed under Chapter 395 of the Florida Statutes, 75 percent of the hospital's usual and customary charges;

 c. for emergency services and care as defined by Section 395.002 of the Florida Statutes, provided in a facility licensed under Chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community;

 d. for hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services;

 e. for hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services; and

 f. for all other medical services, supplies and care, 200 percent of the allowable amount under the participating physicians fee schedule of Medicare Part B, except as follows:

 (1) for services, supplies and care provided by ambulatory surgical centers and clinical laboratories, 200 percent of the allowable amount under Medicare Part B; and

 (2) for durable medical equipment, 200 percent of the allowable amount under "The Durable Medical Equipment Prosthetics/Orthotics and Supplies" fee schedule of Medicare Part B.

However, if such services, supplies or care is not reimbursable under Medicare Part B, as provided in this subsection f., **we** will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under Section 440.13 of the Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies or care is provided. Services, supplies or care that is not reimbursable under Medicare or workers' compensation will not be reimbursed by **us**.

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies or care is rendered and for the area in which such services, supplies or care is rendered. This applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedules of Medicare Part B for 2007 for medical services, supplies and care subject to Medicare Part B.

In determining the appropriate reimbursement under the applicable Medicare fee schedule, all reasonable, medically necessary, and covered charges for services, supplies and care submitted by physicians, non-physician practitioners, or any other provider will be subject to the Center for Medicare Services (CMS) coding policies and payment methodologies, including applicable modifiers. The CMS policies include, but are not limited to: coding edits, both mutually exclusive and inclusive, payment limitations, and coding guidelines subject to the National Correct Coding Initiative (NCCI), Hospital Outpatient Prospective Payment System (OPPS), Multiple Procedure Payment Reduction (MPPR), and Multiple Surgery Reduction Rules (MSRR).

**We** will reduce any payment to a medical provider under this Part II(A) by any amounts **we** deem to be unreasonable **medical benefits**. However, the **medical benefits** shall provide reimbursement only for such services, supplies and care that are lawfully rendered, supervised, ordered or prescribed. Any reductions taken will not affect the rights of an **insured person** for coverage under this Part II(A). Whenever a medical provider agrees to a reduction of **medical benefits** charged, any co-payment owed by an **insured person** will also be reduced.

Continued

The **insured person** shall not be responsible for payment of any reductions applied by **us**. If a medical provider disputes an amount paid by **us**, **we** will be responsible for resolving such dispute. If a lawsuit is initiated against an **insured person** as a result of the reduction of a medical bill by **us**, other than reductions taken pursuant to FL St. 627.736 (5)(a)(1) (a through f), **we** will provide the **insured person** with a legal defense by counsel of **our choice**, and pay any resulting judgment. The **insured person** must cooperate with **us** in the defense of any claim or lawsuit. If **we** ask an **insured person** to attend hearings or trials, **we** will pay up to $200 per day for loss of wages or salary. **We** will also pay other reasonable expenses incurred at **our** request.

2. Effective January 1, 2013, the following definition is added to the 'Additional Definitions" section in Part II(A):

   '**Emergency medical condition**' means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following: (a) serious jeopardy to patient health; (b) serious impairment to bodily functions; or (c) serious dysfunction of any bodily organ or part.

3. Effective January 1, 2013, the definition of **"Medical benefits"** in the "Additional Definitions" section in Part II(A) is deleted and replaced by the following:

   "**Medical benefits**" means 80 percent of all reasonable expenses incurred for medically necessary medical, surgical, x-ray, dental and rehabilitative services, including prosthetic devices and medically necessary ambulance, hospital and nursing services. **Medical benefits** only include: 1) services and care received within the initial 14 days after the motor vehicle accident, or 2) follow up services and care received beyond the initial 14 days after the motor vehicle accident if services and care has been previously received within the initial 14 days after the motor vehicle accident, and a referral for more services and care have been provided by a statutorily authorized provider, and the follow up services and care are consistent with the underlying medical diagnosis. **Medical benefits** do not include massage, as defined in FL. St. 480.033, or acupuncture, as defined in FL. St. 457.102, regardless of the person, entity or licensee providing the massage or acupuncture, and a licensed massage therapist or licensed acupuncturist will not be reimbursed for **medical benefits**.

4. Effective January 1, 2013, the definition of **"Medical benefits"** in the "Extended Personal Injury Protection Coverage" section in Part II(A) is deleted and replaced by the following:

   "**Medical benefits**" means all reasonable expenses incurred for medically necessary medical, surgical, x-ray, dental and rehabilitative services, including prosthetic devices and medically necessary ambulance, hospital and nursing services. **Medical benefits** only include: 1) services and care received within the initial 14 days after the motor vehicle accident, or 2) follow up services and care received beyond the initial 14 days after the motor vehicle accident if services and care have been previously received within the initial 14 days after the motor vehicle accident, and a referral for more services and care has been provided by a statutorily authorized provider, and the follow up services and care are consistent with the underlying medical diagnosis. **Medical benefits** do not include massage, as defined in FL. St. 480.033, or acupuncture, as defined in FL. St. 457.102, regardless of the person, entity or licensee providing the massage or acupuncture, and a licensed massage therapist or licensed acupuncturist will not be reimbursed for **medical benefits**.

5. Effective January 1, 2013, the "Limit of Liability" provision in Part II(A) is deleted and replaced by the following:

   **LIMIT OF LIABILITY**

   {Variable: IF AU = **autos**, IF MT = **vehicles**}

   The limit of liability shown on the **declarations page** for Personal Injury Protection is the most **we** will pay for each **insured person** injured in any one accident, regardless of the number of:

   1. claims made;

   2. **covered <X>**;

   3. **insured persons**;

   4. lawsuits brought;

   5. vehicles involved in the accident; or

   6. premiums paid.

The maximum reimbursement for services and care is limited to $2,500, unless it has been determined that the injured person had an **emergency medical condition**. That determination can affirmatively be made only by a physician or physician assistant licensed under chapter 458 or 459, a dentist licensed under chapter 466, or an advanced registered nurse practitioner licensed under chapter 464, and further can be made only if no physician or physician assistant licensed under chapter 458 or 459, no chiropractic physician licensed under chapter 460, no dentist licensed under chapter 466, and no advanced registered nurse practitioner licensed under chapter 464 has determined that the injured person did not have an **emergency medical condition**. This provision is applicable to all claims without regard to the identity, or status, of the entity seeking reimbursement, including those claims submitted by government entities possessing a statutory right to present claims under this Part II(A).

Benefits received under any workers' compensation law shall be credited against the benefits provided under this Part II(A). Any deductible elected by a named insured under Personal Injury Protection Coverage applies to those persons indicated as subject to a deductible on the **declarations page**. Any deductible that applies to the named insured shall apply to all persons listed as a named insured on the **declarations page** and any spouse of a named insured. When a deductible applies, the deductible will be applied to 100% of the expenses and losses covered under Personal Injury Protection Coverage. After the deductible is met, each **insured person** is eligible to receive up to $10,000 in total benefits, exclusive of **death benefits**, under Personal Injury Protection Coverage. A separate $5,000 benefit limit is reserved exclusively for **death benefits**. However, the deductible shall not be applied to reduce **death benefits**.

Personal Injury Protection Coverage is primary to the Medical Payments Coverage under Part II(B).

**All other terms, limits and provisions of this policy remain unchanged.**

Form A085 FL (05/12)

6.
Continued

Policy Number: <Policy Number>
<Named Insd Full Name>
< ^ Second Named Insd Full Name>
Page <1X> of <2X>

## Cancellation Refund Endorsement

Your policy is amended as follows:

**Cancellation Refund**

The Cancellation Refund provision is deleted in its entirety and replaced by the following.

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

If this policy is cancelled any refund due will be computed on a daily pro-rata basis.

If **we** cancel this policy or if the cancellation is for nonpayment of premium, any refund due will be mailed within 15 days of the effective date of the policy cancellation.

If **you** cancel **your** policy, or if the named insured is a service member, as defined in Florida Statute §250.01, and he or she cancels due to being called to active duty or being transferred by the United States Armed Forces to a location where the insurance is not required, any refund due will be mailed within 30 days of the effective date of the policy cancellation. **We** may require a service member to present **us** proof as outlined in Florida Statute §627.7283.

**All other terms, limits and provisions of this policy remain unchanged.**

Form 2357 FL (10/10)

# EXHIBIT B



## CLEARVIEW OPEN MRI
Accredited by the American College of Radiology

**Patient ID:**

**Patient's Name:**



### ASSIGNMENT, LIEN AND AUTHORIZATION

I hereby authorize you, my insurance company and/or my attorney, to pay directly to Clearview Open MRI, ("Assignees") such sums as may be due and owing Assignees for services rendered. I also authorize my insurance company to disclose coverage information to Clearview Open MRI, and to withhold such sums for any disability benefits, medical payments, No Fault benefits, or any other insurance benefits obligated to reimburse or from any settlement, judgment, or verdict on my behalf as may be necessary to adequately protect said Assignees. I hereby further give a lien to said Assignees any and all insurance benefits named herein and any and all proceeds of any settlement, judgment, or verdict which may be paid to me as a result of the injuries or illness for which I have been treated by Assignees.

Pursuant to Florida Statutes 627.736(5) I hereby assign the benefits of insurance and any and all causes of action available under my policy of automobile insurance. In the event my insurance company, obligated to make payments to me upon charges made by Assignees for services, refuses to make or reduces such payments, in order to maximize the benefits available under my policy coverage, I request that: the company, assuming there is coverage remaining at the time the company receives the Assignees bill, and if the company fails to pa) Assignees the full amount of the bill(s) submitted, to avoid exhaustion of coverage while Assignees pursues its rights under this Assignment. **I authorize and direct the Insurance Company to set aside and place in escrow an amount equal to the full amount of any such denial or reduction, and to hold that amount in escrow until the dispute is resolved in the appropriate forum.**

I understand that I remain personally responsible for the total amounts due Assignees for their services. I further understand and agree that this Assignment, Lien and Authorization does not constitute any consideration for Assignees to await payments and they may demand payments from me immediately upon rendering services at their option.

I authorize Assignees to release any information pertinent to my case to any insurance company, adjuster, or attorney to facilitate collection under this Assignment. Lien and Authorization. I agree that the above mentioned Assignees be given Special Power of Attorney to endorse/sign my name on any and all checks and claim forms for payment of my bill.

I understand that if this account is assigned to any attorney for collection and/or suit, the Assignees shall be entitled to reasonable attorney's fees and cost of collection. I also understand that if any bad check is written, I agree to pay for those added costs.

Dated this ___25___ day of ___9___ 20___78___

_____

**Signature of Policy holder/Claimant**

# EXHIBIT C

Progressive Group
600 North Westshore Boulevard, Suite 400
Tampa, FL 33609

**PROGRESSIVE®**

Underwritten By:
**Progressive Select Insurance**
**Company**

Document Date: October 25, 2018
Claim Number: ▓▓▓▓
Date of Loss: June 25, 2018
Policyholder: ▓▓▓▓
State of Jurisdiction: FL
Coverage Type: Personal Injury Protection
Date Received: ▓▓▓▓
Bill Number: ▓▓▓▓
Provider Invoice Number: ▓▓▓▓
Progressive Invoice Number: ▓▓▓▓
Payment Number: ▓▓▓▓

Recipient:
CLEARVIEW IMAGING LLC
808 W DE LEON ST
TAMPA, FL 33606-2722

Provider Information:
CLEARVIEW IMAGING LLC CO
808 W DE LEON ST
TAMPA, FL 33606

Patient:



Specialty: Diagnostic Radiology
Zip of Service: 33614
Region: 99
Date(s) of Service: 09/25/2018 - 09/25/2018
Page 1 of 2

# Explanation of Benefits

ICD Diagnosis Codes:

| Diagnosis Pointer (DX Ptr) | Code | Description |
|---|---|---|
|  | | |

ICD Procedure Codes:   No Procedure Code entered for this bill.

| Date of Service | Line | Rev Cd | POS | Proc Cd/ NDC | Mod/ Pkg | DX Ptr | Units | Amount Charged | Amount Allowed | Explanation Codes |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/25/2018 | 1 | | 11 | | | A | 1 | $1,257.99 | $1,006.02 | 432 |
| 09/25/2018 | 2 | | 11 | | | B | 1 | $92.91 | $73.10 | 432 |
| Subtotals | | | | | | | | $1,350.90 | $1,079.12 | |
| Amt Previously Paid | | | | | | | | | $0.00 | |
| Deductible/Co-Pay | | | | | | | | | $215.82 | |
| Totals | | | | | | | | $1,350.90 | $863.30 | |

Revenue Code (Rev Cd):

Place of Service (POS):

11  - Office

CPT Five Digit Codes and/or nomenclature are Copyright 1995-2011 American Medical Association. All Rights Reserved.



Procedure Code/National Drug Code (Proc Cd/NDC):

Modifier/Package (Mod/Pkg):

Explanation Code:

432        -The allowed amount for this procedure is based upon 200% of the 2007 Participating Level of Medicare physician fee
           schedule for the region in which the services were rendered, which is higher than the current fee established for the
           date of service, pursuant to Florida Statute 627.736(5).

Fee Schedule:

Please be aware that pursuant to Florida Statute 627.736 (5) (a) 2. and 5., if an insurer elects to pay pursuant to the fee
schedules found in paragraph 2., then pursuant to paragraph 5., the person providing any services, supplies or care,
cannot bill or attempt to collect from you any amount in excess of the fee schedules, except for coinsurance, which would
be 20% of the fee schedule amount or a deductible up to the maximum policy limits.

Important Information:

Please be advised that pursuant to F.S 627.736, if you have reasonable belief that any of the charges or services contained
within this explanation of benefits involves an alleged error, then you have the option to resubmit a revised claim within
15 calendar days for reconsideration.

**Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a
statement of claim or an application containing any false, incomplete, or misleading information is
guilty of a felony of the third degree.**

This explanation details what we have determined to be the appropriate reimbursement amount based on our careful
review of this claim and the bill(s) and record(s) as submitted. Please note that if additional documentation and/or
information have been requested, payment of the outstanding charge(s) is pending until we have received and reviewed
the requested item(s). Should you disagree with the handling of these charges or have any questions, please contact the
claims representative listed below. Otherwise, we will assume you have accepted our handling under the terms of this
explanation.

MATTHEW R UPDEGRAFF
Claims Department
1-407-618-8872

Enclosure

Form Z740 (06/17)

CPT Five Digit Codes and/or nomenclature are Copyright 1995-2011 American Medical Association. All Rights Reserved.