**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CLEARVIEW IMAGING, LLC d/b/a
CLEARVIEW OPEN MRI,

Plaintiff,

v.

PROGRESSIVE SELECT
INSURANCE COMPANY,

Defendant.
_______________________________________/

CASE NO.: 8:19-cv-1881-CEH-AEP

DISPOSITIVE MOTION

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT (ECF No. 1-1)**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Progressive Select Insurance Company ("Progressive") moves to dismiss the Class Action Complaint (the "Complaint"; ECF No. 1-1) of Plaintiff Clearview Imaging, LLC ("Clearview"). The reasons for this Motion are more fully set forth below in the accompanying memorandum of law.

**MEMORANDUM OF LAW**

**I. Concise Statement of the Relief Requested**

Progressive seeks the dismissal of this meritless action in its entirety and with prejudice. By this lawsuit, Clearview (a provider of magnetic resonance imaging ("MRI") services) seeks to inflate the amount paid by its patients as co-payments for medical bills. While Clearview concedes that Progressive is entitled to adjust the billed amount of Clearview's charges on the 80% of bills covered by the patients' auto insurance policies based on the schedule of maximum charges in the Florida No-Fault ("PIP") Statute, Fla. Stat. § 627.736(5)(a)1., it argues that its patients are not entitled to a similar adjustment on the

remaining 20% of the bill attributable to their co-payments. Clearview asserts this illogical theory on behalf of itself and other medical providers on a class action basis – seeking license to overcharge patients for insurance co-payments class-wide.

This suit is groundless on several levels. First, Clearview improperly attempts to sue Progressive for the inflated co-payment amounts. Such co-payments are not covered under the patients' Progressive auto policies – so any attempt to address those extra-contractual payments must be directed at the patients (and not Progressive). Alternatively, the patients are necessary parties to any litigation over their co-payments. Third, Clearview's theory as to why it may recover the co-payments from Progressive is inconsistent with the language of the applicable policies, the Florida PIP Statute, precedent, and basic common sense. Beyond these fundamental flaws, Clearview fails to allege compliance with the PIP Statute's demand requirement (Fla. Stat. § 627.736(10)), urges the Court to consider improper splitting of claims in violation of Fla. Stat. § 627.736(15), and improperly seeks declaratory and injunctive relief when an available remedy at law (damages) is otherwise available.

Florida Statute § 817.234(7)(a) (False and Fraudulent Insurance Claims) makes it incumbent on medical providers like Clearview to collect co-payments from patients:

> It shall constitute a material omission and insurance fraud, punishable as provided in subsection (11), for any service provider, other than a hospital, to engage in a general business practice of billing amounts as its usual and customary charge, if such provider has agreed with the insured or intends to waive deductibles or copayments, or does not for any other reason intend to collect the total amount of such charge. . . .

Clearview makes no allegation that it has attempted to collect the reasonable co-payment from its patient for the bill at issue. It appears that Clearview seeks to avoid this requirement by attempting to justify both the inflation of such co-payment amount and its recovery from the

patient's insurer, instead of the patient. This incongruous theory must be rejected; and the Complaint should be dismissed in its entirety.

## II. Background

Clearview is a provider of magnetic resonance imaging ("MRI") services that performed an MRI and x-rays on Progressive insured A.M.[1] on September 25, 2018 after A.M.'s auto accident on June 25, 2018. (Compl. at ¶¶ 24, 26 and Ex. C). Clearview billed Progressive for those imaging services; and this Action arises from a billing dispute between the parties regarding the payment thereof. (*Id.* at ¶ 30). This dispute arises under the Florida No-Fault ("PIP") Statute, Fla. Stat. § 627.736 (2018) and A.M.'s Progressive insurance policy.[2] Because Clearview is not a Progressive insured, it alleges standing to sue based on an assignment of benefits from A.M. (*Id.* at ¶ 27 and Ex. B).

### A. The Florida No-Fault ("PIP") Statute, Fla. Stat. § 627.736 (2018)

By statute, PIP coverage must cover: "[e]ighty percent of all reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services . . . ." The remaining 20% is charged to the insured as a co-payment.[3] *See Nationwide Mut. Ins. Co. v.*

---

[1] Clearview includes only the patient's initials; Progressive will do the same. (Compl. at ¶ 24).

[2] Progressive notes that the policy form attached to the Complaint as Exhibit A is a generic policy form that does not apply to A.M. Progressive obtained the information redacted in Clearview's public filing from Clearview's counsel, which enabled Progressive to locate a copy of the applicable certified policy in effect as of the date of loss, which is attached hereto as **Exhibit 1** (the "Policy"). The Court may consider this Policy on a motion to dismiss. *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015); *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007); *see also Blue Supply Corp. v. Novos Electro Mechanical, Inc.*, 990 So. 2d 1157, 1159 (Fla. 3d DCA 2008).

[3] Co-payments may be covered by optional Medical Payments ("Medpay") coverage if an insured has purchased such coverage. *See MRI Scan Ctr., Inc. v. Allstate Ins. Co.*, 2007 WL 2288149, at *2 (S.D. Fla. 2007), *aff'd*, 273 F. App'x 835 (11th Cir. 2008) (Medpay benefits pay the full remaining balance of a medical bill after PIP pays its capped rate); *State Farm Mut. Auto. Ins. Co. v. Pressley*, 28 So. 3d 105, 109 & n.3 (Fla. 1st DCA

*Jewell*, 862 So. 2d 79, 86 (Fla. 2d DCA 2003); *see also* Fla. Stat. § 627.736(1)(a) (2012 to date). The PIP statute provides additional guidance as to medical charges (emphasis added):

> (5) CHARGES FOR TREATMENT OF INJURED PERSONS.—
>
> (a) A physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance **may charge the insurer and injured party only a reasonable amount** pursuant to this section for the services and supplies rendered, and the insurer providing such coverage . . . . However, such a charge may not exceed the amount the person or institution customarily charges for like services or supplies. In determining whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, reimbursement levels in the community and various federal and state medical fee schedules applicable to motor vehicle and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

Subsection (5)(a)1. provides that an insurer may choose to limit reimbursement to 80 percent of a "schedule of maximum charges" (the "Schedule") (emphasis added):

> 1. The insurer may limit reimbursement to 80 percent of the following **schedule of maximum charges:**[4]
>
> * * *
>
> f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
>
> (I) The participating physicians fee schedule of Medicare Part B. . . .[5]

---

2010) ("[MedPay] benefits are essentially excess coverage that is not implicated until PIP benefits are paid and exhausted.").

[4] The Schedule contains additional subsections (a)-(e) which set forth maximum reimbursement amounts for other categories of services. Subsection (f) applies to the imaging services addressed here. A full copy of the PIP Statute is attached hereto as **Exhibit 2**.

[5] Subsection (5)(a)2. provides guidance as to how to apply the Medicare Part B schedule referenced in Subsection (5)(a)1.f.:

> 2. For purposes of subparagraph 1., the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services,

Subsection (5)(a)4. provides (emphasis added):

> If an insurer limits payment as authorized by subparagraph 1. [the Schedule], the person providing such services, supplies, or care may not bill or attempt to collect from the insured any amount in **excess of such limits, except for amounts that are not covered by the insured's personal injury protection coverage due to the coinsurance amount or maximum policy limits**.

**B. <u>The Progressive Policy</u>**

The Policy also provides PIP coverage for 80% of reasonable expenses for medically necessary services:

> **PART II(A) - PERSONAL INJURY PROTECTION COVERAGE**
>
> **INSURING AGREEMENT**
>
> If **you** pay the premium for this coverage, **we** will pay benefits that an **insured person** is entitled to receive pursuant to the Florida Motor Vehicle No-Fault Law, as amended, because of **bodily injury**:
> 1. caused by an **accident**;
> 2. sustained by an **insured person**; and
> 3. arising out of the ownership, maintenance or use of a **motor vehicle**.
>
> Personal Injury Protection Coverage benefits consist of:
> 1. **medical benefits**;
>
> ***
>
> 6. "**Medical benefits**" means 80 percent of all reasonable expenses incurred for **medically necessary** medical, surgical, x-ray, dental and rehabilitative services….

---

supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this subparagraph, the term "service year" means the period from March 1 through the end of February of the following year.

(Ex. 1, Form 9611D FL (07/13) at 7-8). This is subject to, among others, the following conditions, including the limitation of reimbursement based on the Schedule in the PIP Statute (*Id.* at 12-13 (underlined emphasis added)):

> **Unreasonable or Unnecessary Medical Benefits.** If an **insured person** incurs **medical benefits** that **we** deem to be unreasonable or unnecessary, **we** may refuse to pay for those **medical benefits** and contest them.
>
> **We** will determine to be unreasonable any charges incurred that exceed the maximum charges set forth in Section 627.736 (5)(a)(2) (a through f) of the Florida Motor Vehicle No-Fault Law, as amended. Pursuant to Florida law, **we** will limit reimbursement to, and pay no more than, 80 percent of the following schedule of maximum charges:[6]
>
> * * *
>
> f. for all other medical services, supplies and care, 200 percent of the allowable amount under the participating physicians fee schedule of Medicare Part B. . . .
>
> * * *
>
> The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies or care is rendered and for the area in which such services, supplies or care is rendered. This applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedules of Medicare Part B for 2007 for medical services, supplies and care subject to Medicare Part B.

The Policy also includes language for the protection of Progressive's insureds (*Id.* at 14):

> **We** will reduce any payment to a medical provider under this Part II(A) by any amounts **we** deem to be unreasonable **medical benefits**. However, the **medical benefits** shall provide reimbursement only for such services, supplies and care that are lawfully rendered, supervised, ordered or prescribed. Any reductions taken will not affect the rights of an **insured person** for coverage under this Part II(A). Whenever a medical provider agrees to a reduction of **medical benefits** charged, any co-payment owed by an **insured person** will also be reduced.

---

[6] Like the PIP Statute, the Policy excerpts all the provisions of the Schedule, but (f) is the only one that applies to the imaging services implicated here. The Policy also incorporates the language of Fla. Stat. § 627.736(5)(a)2. regarding how to apply the Medicare schedule referenced in (f). Ex. 1 at 13.

> The **insured person** shall not be responsible for payment of any reductions applied by **us**. If a medical provider disputes an amount paid by **us**, **we** will be responsible for resolving such dispute. If a lawsuit is initiated against an **insured person** as a result of the reduction of a medical bill by **us**, other than reductions taken pursuant to FL St. 627.736 (5)(a)(1) (a through f), **we** will provide the **insured person** with a legal defense by counsel of **our** choice, and pay any resulting judgment. The **insured person** must cooperate with **us** in the defense of any claim or lawsuit. If **we** ask an **insured person** to attend hearings or trials, **we** will pay up to $200 per day for loss of wages or salary. We will also pay other reasonable expenses incurred at **our** request.

### C. <u>The Dispute Between Clearview and Progressive (and A.M.)</u>

As set forth on the Explanation of Benefits ("EOB") form, Clearview billed Progressive $1,350.90 for A.M.'s MRI and x-rays. (Compl. at Ex. C). Progressive adjusted the amount billed (the "Billed Amount") based on the application of the Schedule, Fla. Stat. § 627.736(5)(a)1.f. The resulting amount (the "Allowed Amount") was $1,079.12, explained as follows:

> 432 – The allowed amount for this procedure is based upon 200% of the 2007 Participating Level of Medicare physician fee schedule for region in which the services were rendered, which is higher than the current fee established for the date of service, pursuant to Fla. Stat. 627.736(5).[7]

(ECF No. 1-1 at Ex. C). The adjustment was consistent with the reimbursement limits in the Schedule, Fla. Stat. § 627.736(5)(a)1.f., and the Policy. Progressive paid 80% of the Allowed Amount for A.M.'s MRI and x-rays: $863.30 (*Id.*).

While Clearview does not dispute that Progressive was permitted to adjust its own Policy payments to 80% of the Allowed Amount (based on the application of the Schedule) (ECF No. 1-1 at ¶ 21), it challenges the application of the Schedule to A.M.'s 20% *co-payment*.

---

[7] Progressive limited reimbursement for the MRI based on Subsection (5)(a)1.f. of the PIP Statute (200% of Medicare Part B). Because the 2007 Medicare Part B schedule provided a higher amount than the 2018 Medicare schedule, Progressive applied the 2007 schedule pursuant to the policy and Subsection (5)(a)2. of the PIP Statute. Fla. Stat. § 627.736 (5)(a)2. (2012 to date); Ex. 1 at 13.

(*Id.* at ¶¶ 30, 46). Rather than a 20% co-payment based on the Allowed Amount (applying the Schedule), Clearview appears to allege that A.M. should be responsible for 20% of the full Billed Amount. The following table demonstrates the payment dispute:

| **Patient/Insured** | **A.M.** |
|---|---|
| Billed Amount (by Clearview) for MRI and x-rays | $1,350.90 |
| Allowed Amount<br>(based on Progressive's application of the Schedule) | $1,079.12 |
| 80% of the Allowed Amount<br>(the amount paid by Progressive) | $863.30 |
| **20% of the Billed Amount** | **$270.18** |
| **20% of the Allowed Amount** | **$215.82** |
| **Difference sought by Clearview**<br>(20% of Billed Amount minus 20% of Allowed Amount) | **$54.36** |

Clearview appears to allege that A.M. should be responsible for a higher co-payment amount of $270.18 based on the Billed Amount; instead of lower co-payment amount of $215.82 based on the application of the Schedule. Indeed, Clearview contends that the Schedule may not be applied to an insured's co-payment. (*Id.* at ¶¶ 30, 46). For A.M., this would result in a co-payment $54.36 more expensive than a co-payment based on the Allowed Amount.

Clearview's theory that the Schedule may not be applied to A.M.'s co-payment is inconsistent with the PIP Statute, the legislative history, the A.M. Policy, case law, and common sense. Based on its flawed theory, Clearview brings claims for declaratory relief, injunctive relief, and breach of contract on behalf of a putative class defined as (Compl. at ¶ 33):[8]

[8] The class definition excludes any coinsurance or co-payment claims which: (a) have already been fully paid by the insured or the Insurance Company, or were otherwise satisfied through litigation or settlement or release; (b) were denied or reduced for any reason other than the Insurance Company's purported application of the Fee Schedule Method to the portion of the medical bill that applies to the insured patient's 20% coinsurance or co-payment; and/or (c) are the subject of pending litigation against the insured patient or the Insurance

> All persons and/or entities who:
>
> (a) are health care providers operating in the State of Florida;
>
> (b) issued a medical bill for health care services provided to a patient who had PIP coverage under the Insurance Policy issued by the Insurance Company during the 5-year time period prior to the filing of this complaint;
>
> (c) own an assignment of benefits from said insured patient for insurance benefits associated with the medical bill; and
>
> (d) received an "Explanation of Reimbursement" form from the Insurance Company which purported to extend the Fee Schedule Method reductions to the portion of the medical bill that applies to the insured patient's 20% coinsurance or co-payment. . . .

### D. <u>The Legislative Background</u>

Medical provider abuse of Florida PIP coverage is long and well-documented. Report on Fla. Motor Vehicle No-Fault Ins. (Personal Injury Protection), Office of the Ins. Consumer Advocate at 2[9] (Dec. 2011) ("Despite repeated efforts by the Legislature in recent years to implement Personal Injury Protection (PIP) reforms and anti-fraud measures, the level of over-utilization in certain medical procedures, manipulation of the claims process and fraudulent activity in the system has surpassed unprecedented levels and is rapidly becoming pervasive in many areas of our state.").

The Schedule in Section 627.736(5)(a)1. – that allows insurers to limit reimbursement based on **twice** the amount payable by Medicare for most services (including Clearview's MRI

---

Company as of the date of any class certification order or other deadline established by the Court. (Compl. at ¶ 33).

[9] Available at: https://www.myfloridacfo.com/division/ICA/docs/PIP Working Group Report 12.14.2011.pdf; *see also* Pinnacle Actuarial Resources, Impact Analysis of HB 119, at 5-7 (Aug. 20, 2012): https://www.floir.com/siteDocuments/HB119ImpactAnalystFINAL08202012.pdf.

and x-rays here) – was intended to *resolve* billing disputes. *Id.* ("The implementation of the fee schedule which was intended to resolve billing disputes and litigation has instead become the dominant issue associated with litigation. This has led to a significant increase in PIP premiums, which translates into a 'fraud tax' of nearly $1 billion on Floridians.").

The 2012 amendments to the PIP Statute were intended to combat fraud and billing abuses, reduce escalating medical costs, conserve benefits for emergencies, and reduce premiums.[10] As set forth in the Final Bill Analysis:

- The number of PIP claims opened or recorded in 2010 increased by 28% since 2006;
- From 2006-2010, insurers paid $8.7 billion for PIP claims and the number of PIP lawsuits in which the insurer was the defendant increased by 387%;
- From 2008-2010, PIP benefits paid by insurers increased by 70%;
- Based on trends, a 19% increase in PIP claims paid, a 9% increase in claim severity, and a 29% increase in pure premium can be expected; and
- Florida exceeds the national average for number of health care provider charges per PIP claim and the average number of procedures per claim.

(Exs. 3 & 4 at 6) (citing Office of Insurance Regulation ("OIR") "Report on Review of the 2011 Personal Injury Protection Data Call"). There is recognition of escalating medical costs like those at issue here as a driver for the changes in the Statute.

---

[10] *See, e.g.*, CS/CS/H.B. 119, H.R., Final Bill Analysis (May 7, 2012) (**Exhibit 3**); CS/CS/H.B. 119, H.R., Final Bill Analysis (Mar. 19, 2012) (**Exhibit 4**); CS/CS/H.B. 119, H.R. Message Summary (Mar. 9, 2012) (**Exhibit 5**); CS/CS/H.B. 119, H.R. Staff Analysis (Feb. 27, 2012) (**Exhibit 6**); CS/CS/H.B. 119, H.R. Staff Analysis (Jan. 25, 2012) (**Exhibit 7**). Ch. 2012-197, Laws of Fla. The Court may consider these in connection with this motion to dismiss. *See, e.g.*, *Robbins v. Garrison Prop. & Cas. Ins. Co.*, 809 F. 3d 583, 587-588 (11th Cir. 2015) (in affirming dismissal of class actions against two insurers, the court considered the same legislative history); *Enivert v. Progressive Select Ins. Co.*, 62 F. Supp. 3d 1352 (S.D. Fla. 2014) (same); *Robbins v. Garrison Prop. & Cas. Ins. Co.*, 62 F. Supp. 3d 1349 (S.D. Fla. 2014) (same); *see also Medical Ctr. of the Palm Beaches v. USAA Cas. Ins. Co.*, 202 So. 3d 88, 92 (Fla. 4th DCA 2016).

## Argument

### I. Clearview Cannot Sue Progressive Over the Insured's Co-Payment

#### A. The Insured's Co-Payment Is Not Covered by the Policy

The interpretation of an insurance contract is a question of law for the Court. *See Fabricant v. Kemper Indep. Ins. Co.*, 474 F. Supp. 2d 1328, 1330 (S.D. Fla. 2007); *Altman Cont'rs, Inc. v. Crum & Forster Specialty Ins. Co.*, 232 So. 3d 273, 276 (Fla. 2017); *Thomas v. Fusilier*, 966 So. 2d 1001, 1002 (Fla. 5th DCA 2007). The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties – not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002).[11] The insured's co-payment is not covered by the Policy.

Clearview's theory addresses *only* the insured's co-payment amount. (ECF No. 1-1 at ¶¶ 21, 30, 49). As Clearview concedes, it is not challenging the portion of its bill (the 80%) otherwise covered by A.M.'s PIP benefits. (*Id.* at ¶ 21). While Clearview argues that it must be paid *more* for the portion of the bill to be paid by the insured, it is attempting to make its case in the absence of the very person (A.M.) most affected. There is no statutory or Policy basis for Clearview to sue Progressive over the insured's co-payment. By definition, that co-payment amount is *not* covered by the Policy.

Clearview brings this Action based on an assignment from A.M. (ECF No. 1-1 at ¶ 27 & Ex. B); but that assignment is limited to insurance benefits. A.M.'s co-payment does not

[11] When an insurance contract is entered into on a matter governed by statute, "the parties are presumed to have entered into such agreement with reference to the statute, and the statutory provisions become part of the contract." *Grant v. State Farm Fire & Cas. Co.*, 638 So. 2d 936, 938 (Fla. 1994).

constitute insurance benefits; it represents the 20% of medical expenses *not* covered by the PIP Statute or A.M.'s Policy. *See* Fla. Stat. § 627.736(1)(a) (2018) and Ex. 1 at 7-8. Indeed, the assignment specifically provides that: "I (A.M.) understand that I remain personally responsible for the total amounts due Assignees for their services." (ECF No. 1-1 at Ex. B). That "total amount" includes the co-payments *not* covered by insurance benefits.

No Policy provision provides *coverage* for A.M.'s co-payments, and Clearview cannot point to one. Indeed, the Policy specifically provides coverage for only "80 percent of all reasonable expenses incurred for **medically necessary** medical, surgical, x-ray, dental and rehabilitative services. . . ." (Ex. 1 at 8). There is no Policy agreement to pay the additional 20% attributable to the insured's co-payment. Finding "coverage" for the insured's co-payment amount would also render Medpay coverage (the optional coverage which picks up payment for co-payments) moot – which is an unreasonable and absurd result.

While the Policy includes some language regarding Progressive's protection of an insured in the event of a dispute, that language does not apply to this dispute. The specific Policy language states (*Id.* at 14):

> The **insured person** shall not be responsible for payment of any reductions applied by **us**. If a medical provider disputes an amount paid by **us**, **we** will be responsible for resolving such dispute. If a lawsuit is initiated against an **insured person** as a result of the reduction of a medical bill by **us**, other than reductions taken pursuant to FL St. 627.736 (5)(a)(1) (a through f), **we** will provide the **insured person** with a legal defense by counsel of **our** choice, and pay any resulting judgment. The **insured person** must cooperate with **us** in the defense of any claim or lawsuit. If **we** ask an **insured person** to attend hearings or trials, **we** will pay up to $200 per day for loss of wages or salary. **We** will also pay other reasonable expenses incurred at our request.

On its face, this provision does not apply to the insured's co-payment. The adjustments applied by Progressive on the *80% of the bills covered by PIP benefits* were the only

"reductions" actually "applied" by Progressive. While the EOBs may have a line for the "Deductible/Co-Pay" (Compl. at Ex. C), that merely displays the 20% of the Allowed Amount *not covered by Progressive*. That is not a reduction "applied" by Progressive; because Progressive cannot reduce amounts covered by an insured's co-payment (and not covered by insurance).

Not only does this provision not apply to insured co-payments, it does not create any "indemnification" obligation on the part of Progressive. The first sentence applies only to disputes regarding the "amount paid by [Progressive]" and cannot apply to disputes regarding amounts paid (or not paid) by the insured. The second sentence specifically exempts Schedule reductions from Progressive's defense of such suits – which are *exactly* the reductions identified by Clearview here. To the extent that the Policies can be read to require Progressive to defend Patients in billing disputes, it is clear that the dispute raised here is not covered by such provisions.

**B. Clearview's Dispute is With A.M. (and Not Progressive)**

As Clearview notes, the Policy includes language that "[whenever] a medical provider agrees to a reduction of **medical benefits** charged, any co-payment owed by an **insured person** will also be reduced." (ECF No. 1-1 at ¶ 22; Ex. 1 at 12). Clearview does not agree to the reduction herein. And even if that language did not require the provider's agreement, it does not create any obligation to cover the co-payment on the part of Progressive.

To the extent that Clearview has a dispute regarding the amount of the co-payment, that is an issue between the provider and the insured – and not Progressive. Clearview should

be prosecuting its theory in actions against the insured directly. Of course, such actions are unlikely to be successful because the PIP Statute explicitly provides that:

> If an insurer limits payment as authorized by subparagraph 1. [the Schedule], the person providing such services, supplies, or care may not bill or attempt to collect from the insured any amount in excess of such limits, except for amounts that are not covered by the insured's personal injury protection coverage due to the coinsurance amount or maximum policy limits.

Fla. Stat. § 627.736(5)(a)4. As Clearview concedes in a similar case filed against another Progressive entity, this provision prohibits a health care provider from balance-billing their insured patients for reductions applied pursuant to the Schedule.[12]

### C. The *Florida Hospital* Case Does Not Support Clearview's Theory

Clearview overreaches in relying on *Progressive Select Ins. Co. v. Florida Hospital Med. Cntr.*, 260 So. 3d 219 (Fla. 2018) to support its theory. (Compl. at ¶¶ 17-18). First, that case addressed the application of the Schedule to bills affected by an insured's PIP *deductible* – and not amounts affected by an insured's co-payments. *Florida Hospital*, 260 So. 3d. at 220. Second, the dispute concerned the payment of the *80% of PIP benefits covered by Progressive*; and not the amounts payable by the patients themselves (unlike this Action). Because Progressive had erroneously assumed that the Schedule should be applied to calculate the amount of benefits covered by the insured's PIP deductible prior to accessing insurance (the first $1,000 in medical bills), Progressive had wrongly attributed the amounts covered by the deductible before *calculating its own obligations* as to the payment of the 80% covered by the policy. *Id.* at 221, 224. The dispute was over Progressive's calculation of its *own obligations*

[12] *See* Amended Complaint (without exhibits), *Clearview Imaging LLC v. Progressive Am. Ins. Co.*, No. 8:19-cv-1299-MSS-CPT (ECF No. 19 at ¶ 54) (**Exhibit 8**).

as to 80% covered by the policy – and not amounts payable by the insured, who was not a party to the action. *Id.* at 226. By contrast, this Action does not challenge Progressive's calculation of its own obligations as to the 80% covered by the Policy. It challenges the payment for the 20% not covered by the Policy based on the Schedule.

Third, the *Florida Hospital* case addressed the interplay between the PIP Statute and a specific Florida statute addressing PIP deductibles: Fla. Stat. § 627.739 (the "Deductible Statute"). The Deductible Statute provides that a deductible "be subtracted from '100 percent' of expenses and losses" (*i.e.* without Schedule reductions) *before* an insurer calculates the amount covered by PIP benefits under the policy. *Florida Hospital*, 260 So. 3d at 226. That statute has no application to an insured's co-payments and no application to this case. The "100 percent" mandate in that Statute applies only to deductibles covered by that Statute. By contrast, the PIP Statute itself includes a specific provision that governs an insured's co-payments – Fla. Stat. § 627.736(5)(a)2. And that provision – unlike the Deductible Statute – specifically forbids balance billing patients for Schedule reductions.

### D. <u>Clearview's Theory is Based On Two Suspect County Court Orders</u>

Clearview's theory appears to be based on two suspect county court rulings that Clearview argues render Progressive's Policy language "unlawful." (Compl. at ¶ 23 and n.5): *Hess Spinal & Medical Cntrs., Inc. (Iliev) v. Progressive Am. Ins. Co.*, 25 Fla. L. Weekly Supp. 564a (Fla. Hillsborough Cnty. Ct. Aug. 22, 2017) and *Advantacare of Fla., LLC (Abreu) v. Progressive Am. Ins. Co.*, 25 Fla. L. Weekly Supp. 61a (Fla. Volusia Cnty. Ct. Mar. 17, 2017), *per curiam aff'd*, Case No. 2017-1008-APCC (Fla. 7th Jud'l Cir. Mar. 28, 2018).

The *Hess Spinal* decision is no longer good law – as it was reversed by an appellate panel of the Thirteenth Judicial Circuit since Clearview filed its Complaint. The court found that Progressive's policy language clearly elected to limit reimbursement based on the Schedule and directed the trial court to enter judgment for Progressive. (*See* **Exhibit 9**).

Similarly, *Abreu* does not constitute binding precedent and does not directly address the issues raised here. In *Abreu*, a provider challenged the application of the Schedule *to the 80% of the payment* covered by the Progressive policy. It did not focus on the calculation of the insured's co-payment.

More importantly, *Abreu* is no longer good law. The ruling pre-dates the decision in *State Farm Mut. Auto. Ins. Co. v. MRI Assocs. of Tampa, Inc.*, 252 So. 3d 773 (Fla. 2d DCA May 18, 2018). In that case, the court reviewed policy language very similar to Progressive's and determined that – notwithstanding the provider's arguments and the trial court's ruling – the insurer's policy language effectively elected to limit reimbursement based on the Schedule. *Id.* at 778; *see also Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d 973, 979-80 (Fla. 2017) (finding that similar policy language effectively elected to limit reimbursement based on the Schedule). Several federal courts, as well as circuit appellate courts, have indicated that the very Progressive policy language at issue in this case **does effectively elect to limit reimbursement based on the Schedule**.[13] *See John S. Virga, D.C., P.A. v. Progressive Am. Ins. Co.*, 215 F. Supp. 3d 1320, 1324-25 (S.D. Fla. 2016); *UR Health Chiro. Corp. v. Progressive Select Ins. Co.*, 285 F. Supp. 3d 1345, 1347-48 (S.D. Fla. 2018); *Progressive Am.*

---

[13] In *Florida Hospital*, while the Court found against Progressive on its deductible application methodology, there was no challenge to Progressive's general ability to limit reimbursement based on the Schedule. *Florida Hospital*, 260 So. 3d at 220-21.

*Ins. Co. v. Neurology Partners, P.A. (Evans)*, (Appeal No. 2017-AP-0060) (Fla. 4th Jud'l Cir. (App.) Apr. 30, 2019); *Moore Chiro. Cntr. Inc. (Beech) v. Progressive Express Ins. Co.*, (Appeal No. 2017-CA-0974) (Fla. 4th Jud'l Cir. (App.) Jan. 14, 2019); *Neurology Partners, PA. (Vos) v. Progressive Am. Ins. Co.*, (Appeal No. 2017-AP-39) (Fla. 4th Jud'l Cir. (App.) Apr. 20, 2018); *Sea Spine Ortho. Inst., LLC (Montalvo) v. Progressive Select Ins. Co.*, 26 Fla. L. Weekly Supp. 401a (Fla. 9th Jud'l Cir. Cnty. Apr. 12, 2018), *aff'd*, Case No. 2016-CV-000069 (Fla. 9th Jud'l Cir. Apr. 12, 2018); *Progressive Select Ins. Co. v. Injury Treatment Cntr. of Boynton Beach, Inc. (Genovese)*, 25 Fla. L. Weekly Supp. 223a (Fla. 15th Jud'l Cir. (App.) May 8, 2017) (the slip opinions are attached as **Composite Exhibit 10**).

Thus, the rulings in *Hess Spinal* and *Abreu* are no longer good law and do not constitute a legitimate basis for Clearview's theory.

## II. A.M. and/or Other Insureds Are Necessary Parties to this Action

Clearview is challenging a provision of A.M.'s Policy. Indeed, Clearview is seeking to increase the amount of a co-payment to be borne by the insured in connection with that Policy. Clearview does not "own" this Policy; it is a mere alleged assignee of certain of A.M.'s PIP benefits. Accordingly, A.M. is a necessary party to this proceeding.

> If a suit is brought by either an assignor or partial assignee, the obligor has the option of requiring joinder of the necessary parties or resorting to interpleader. Fed.R.Civ.P. 19, 22; see *Yorkshire Insurance Co. v. United States*, 171 F.2d 374, 376 (3d Cir. 1948), *aff'd sub nom. United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949). The fact that the litigation is in the form of a class action rather than an ordinary suit does not impair the obligor's right to insist upon joinder of all interested parties.

*In re Fine Paper Litig.*, 632 F.2d 1081, 1091 (3d Cir. 1980); *see also Green Tree Fin. Corp. v. Holt*, 171 F.R.D. 313, 317-18 (N.D. Ala. 1997) (seller who claimed interest in assignee's action

against purchaser was an indispensable party). Under Fed. R. Civ. P. 19, an absent party is required when: (a) the court cannot accord complete relief among the existing parties; (b) the nonparty would be prejudiced in its ability to protect itself in the litigation; and (c) the nonparty's absence creates a substantial risk that existing parties would incur duplicative obligations. *Hallums v. Infinity Ins. Co.*, 2018 WL 1009277, at *1 (S.D. Fla. Feb. 20, 2018); *Raimbeault v. Accurate Mach. & Tool, LLC,* 302 F.R.D. 675, 682-83 (S.D. Fla. 2014).

There can be no doubt that the non-joinder of A.M. meets this test: (a) the Court cannot accord complete relief as to A.M.'s co-payment and PIP coverage without A.M.'s presence; (b) A.M. will be prejudiced in the ability to protect against arguments addressing their co-payment if absent; and (c) A.M.'s absence creates a substantial risk that providers will attempt to collect increased co-payments from A.M. in possible duplicative litigation or otherwise. As set forth above, Fla. Stat. § 817.234(7)(a) requires medical providers to collect such co-payments; and Clearview makes no allegation that it has attempted to collect the co-payment from A.M. It is clear that A.M. must be joined.[14]

When an injunction or declaration regarding a policy is sought, the insureds and insurers are necessary parties. *See, e.g., Liberty Mut. Fire Ins. Co. v. Int'l Video Distrib., L.L.C.*, 2014 WL 11776959, at *3 (S.D. Fla. July 2, 2014) (when declaratory relief was sought with regard to auto policy, the parties at issue were the insurers and insureds who entered into the policy); *Raimbeault*, 302 F.R.D. at 684 (in cases challenging a contract, all parties to that contract will typically be joined); *see also Am. Standard Ins. Co. v. Rogers*, 123 F. Supp. 2d

---

[14] Joinder remains feasible under Rule 19(a)(2) if A.M. is added. Even though A.M. is a Florida citizen, the minimal diversity required under the Class Action Fairness Act would remain. *See* 28 U.S.C. § 1332(d)(2); *Hallums*, 2018 WL 1009277, at *2-3 (joining lessor would not defeat jurisdiction under CAFA since at least one plaintiff was diverse from at least one defendant).

461, 467-68 (S.D. Ind. 2000) (injured third party was necessary party in declaratory action by auto insurer seeking to determine liability under the policy); *1800 Atlantic Condo. Ass'n, Inc. v. 1800 Atlantic Devs.*, 569 So. 2d 885, 886 (Fla. 3d DCA 1990) (where an order is sought for an injunction under a contract, all parties to the contract should be joined); *Two Islands Dev. Corp. v. Clarke*, 157 So. 3d 1081, 1084 (Fla. 3d DCA 2015) (same).

## III. The Policy Must Be Interpreted in the Light Most Favorable to A.M. (and not Clearview)

Any argument that A.M. need not be joined because recovery of the co-payment is not sought from A.M. directly ignores that any adjudication regarding A.M.'s co-payment affects A.M. and A.M.'s Policy rights directly. Even if the court were inclined to find any ambiguity regarding coverage of A.M.'s co-payment in the Policy (which it should not), it must resolve any question in favor of **the insured (A.M.)**. *Pressley*, 28 So. 3d at 108 ("the provisions of the Florida No-Fault Act are construed liberally in favor of the insured"). *Cf. Orthopedic Specialists*, 212 So. 3d at 976 (no-fault policies are to be construed in favor of the insured). By suing Progressive pursuant to an assignment of benefits executed by A.M., Clearview "stands in the shoes" of A.M. *See A&M Gerber Chiro. LLC v. Geico Gen. Ins. Co.*, 925 F.3d 1205, 1211 (11th Cir. 2019) (in PIP class action, assignee stands in the shoes of the assignor and has no greater rights than assignor). In this dispute, those shoes are an uncomfortable fit. The Policy construction that would benefit A.M. is clearly the one that allows the Schedule to be applied to *reduce* the insured's co-payments.

Even if this Court were to find that the co-payment would need to be picked up by Progressive, the amount of that payment might lead to the earlier depletion of overall Policy limits or cause Policy premiums to rise – the very things that the 2012 amendments to the PIP

Statute were designed to avoid. To construe the Policy in favor of A.M., this Court must reject Clearview's theory. *See Nunez v. Geico Gen. Ins. Co.* 117 So. 3d 388, 395 & 398 (Fla. 2013) (court noted that the PIP Statute must be construed in favor of the insured); *cf. Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979) ("Moreover, even were we to find that the policy is ambiguous . . . we would still have to prefer [the insurer's] interpretation because it . . . is therefore actually the more favorable to the insured.").

## IV. Clearview Has Not Alleged Compliance with the Pre-Suit Demand Requirement of Fla. Stat. § 627.736 by the Proposed Class

Section (10) of the PIP Statute provides (emphasis added):

> (10) DEMAND LETTER.—
>
> (a) **As a condition precedent to filing any action for benefits under this section, written notice of an intent to initiate litigation must be provided to the insurer.** Such notice may not be sent until the claim is overdue, including any additional time the insurer has to pay the claim pursuant to paragraph (4)(b).
>
> * * *
>
> (d) **If, within 30 days after receipt of notice by the insurer, the overdue claim specified in the notice is paid by the insurer** together with applicable interest and a penalty of 10 percent of the overdue amount paid by the insurer, subject to a maximum penalty of $250, **no action may be brought against the insurer**.

*See also Menendez v. Progressive Express Ins. Co.*, 35 So. 3d 873, 879 (Fla. 2010) (demand letter requirement is substantive); *MRI Assocs. of Am. v. State Farm Fire & Cas. Co.*, 61 So. 3d 462, 465 (Fla. 4th DCA 2011) ("The statutory requirements surrounding a demand letter are significant, substantive preconditions to bringing a cause of action for PIP benefits."); *Bristol West Ins. Co. v. MD Readers, Inc.*, 52 So. 3d 48, 51 (Fla. 4th DCA 2010). As stated in *Ocean Harbor Cas. Ins. v. MSPA Claims I*, 261 So. 3d 637, 648 (Fla. 3d DCA 2018), the law "mandates that a demand letter to be sent to the insurer as a condition precedent to litigation."

Clearview does not allege its own specific compliance with this requirement – let alone compliance by the class members. *See Bristol West*, 52 So. 3d at 52 (Warner, J., concurring) demand requirement "leads me to understand that a class action for benefits would be a practical impossibility, because each provider must serve the statutory notice."); *Shenandoah Chiro., P.A. v. Nat'l Specialty Ins. Co.*, 526 F. Supp. 2d 1283, 1285-86 (S.D. Fla. 2007).

Incredibly, Clearview contends that this provision does not apply because this is "not an action for PIP benefits." (Compl. at ¶ 68). But Clearview contradicts itself in Paragraph 70 of the same count, when it alleges that, under the contract (the only contract identified in the Complaint), it suffered "damages" based on Progressive's "unlawful reductions." If Clearview has standing to sue Progressive, it would only be because its "damages" were covered by the insured's contract benefits. And that would require compliance with the demand letter requirement.[15] The only way the demand letter provision would *not* apply is if they were suing the insured (A.M.) for amounts external to the Policy.

## V. Clearview Contemplates a Scheme Where PIP Providers Engage in Forbidden Claim-Splitting

Even if Clearview was to foreswear damages on its own behalf, the rule against splitting a cause of action requires that class members bring their damage claims in this Action or risk losing those claims. Section 15 of the PIP Statute requires that a PIP plaintiff generally must bring "all claims related to the same health care provider for the same injured person in one action." Fla. Stat. § 627.736(15). Case law also requires that all damages sustained as a result

[15] Clearview cannot allege actual compliance by every member of the class; and every class member has to comply with the requirement. *Ocean Harbor*, 261 So. 3d at 648; *Shenandoah*, 526 F. Supp. 2d at 1290; *see also MRI Assocs. of Am.*, 61 So. 3d at 465.

of a single wrongful act – here the alleged denial of PIP benefits – must be brought in one action or not at all. *Vanover v. NCO Fin. Servs., Inc.*, 2017 WL 2129557, at *7 (11th Cir. May 17, 2017); *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 84 F.3d 1388, 1395 (11th Cir. 1996) (Florida law is clear that the rule against splitting causes of action makes it incumbent upon plaintiffs to raise all available claims in one action); *Plantation Open MRI LLC v. Infinity Auto Ins. Co.*, 2019 WL 2867198, *1 (S.D. Fla. July 3, 2019) (granting dismissal of claims arising out of the same policy between the same parties at issue in a prior action); *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 673 (S.D. Fla. 2009) (claim-splitting rule "applies with equal force in the class action context"); *In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 367 (S.D. Iowa 2008) (no class action exception to claim-splitting rules); *Horton v. Metro. Life. Ins. Co.*, 459 F. Supp. 2d 1246, 1250 (M.D. Fla. 2006) ("*Res judicata* precludes . . . any claim that stems out of the same nucleus of operative fact, or is based upon the same factual predicate.").

While Clearview may seek only amounts associated with the application of the Schedule to its bill in connection with the insured's co-payment, other providers may have other issues related to Progressive's or a patient's handling or payment of their bills, including reductions based on the emergency medical condition provisions of the PIP Statute, reductions or denials based on a lack of reasonableness or medical necessity of treatment, etc. Given the requirement of Section 15 that all such issues be brought together, it is no wonder that class actions for PIP benefits are typically not feasible. *See, e.g.*, *DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 F. App'x 762 (11th Cir. 2012), *aff'g* 271 F.R.D. 676 (S.D. Fla. 2010) (rejecting certification of PIP class for damages, declaratory relief, and injunctive relief);

*Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co.*, 458 F. App'x 793 (11th Cir. 2012), *aff'g*, 271 F.R.D. 538 (S.D. Fla. 2010) (rejecting certification of PIP class for damages and declaratory relief); *Ocean Harbor*, 261 So. 3d at 639, 648 (reversing class action against PIP insurer and noting that establishing liability will necessarily devolve into a series of mini-trials under Florida no-fault law); *IDS Prop. Cas. Ins. Co. v. MSPA Claims 1, Ltd.,* 263 So. 3d 122, 124-25 (Fla. 3d DCA 2018) (questions of payments under the PIP Statute proceed on a factually intensive bill-by-bill and case-by-case basis).

## VI. Clearview's Counts for Declaratory and Injunctive Relief Should Be Dismissed Because Clearview Has an Adequate Remedy at Law

Clearview has a remedy at law.[16] Its contract claim would resolve the legal issue (whether the Schedule may be applied to the insured's co-payment and whether Progressive is responsible therefor) *and* any accompanying claim for benefits. *See State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So. 2d 1067, 1072 (Fla. 2006) (a PIP suit seeks "to recover damages for breach of insurance contract"); *Progressive Express Ins. Co. v. McGrath Cmty. Chiro.*, 913 So. 2d 1281, 1285 (Fla. 2d DCA 2005) (medical provider may sue for PIP benefits if the insured has assigned the right to such benefits under the policy to the provider); *see also Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1318 (S.D. Fla. 2011) (breach of contract was adequate remedy for alleged

[16] Plaintiff cannot sufficiently allege the necessary element of irreparable harm, which is defined as an injury that cannot be cured by money damages. *Weinstein v. Aisenberg*, 758 So. 2d 705, 706 (Fla. 4th DCA 2000); *B.G.H. Ins. Syndicate, Inc. v. Presidential Fire & Cas. Co.*, 549 So. 2d 197, 198 (Fla. 3d DCA 1989). Plaintiff's injury allegations are actually allegations of monetary items (PIP insurance benefits) which can be cured by an award of money damages.

miscalculation of PIP benefits); *MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1210 (same).

Florida courts have not hesitated to *dismiss* claims for declaratory relief if a breach of contract claim is available. In *John S. Virga, D.C., P.A. v. Progressive Am. Ins. Co.*, 215 F. Supp. 3d 1320 (S.D. Fla. 2016), the court dismissed a similar PIP declaratory relief claim:

> It is axiomatic that equitable relief is available only in the absence of an adequate remedy at law. Here there is an adequate legal remedy – damages for breach of contract. Accordingly, declaratory relief is not available where the issue is whether an unambiguous contract has been breached. Neither side disputes that a contract governs the instant action and, for that simple reason alone, the class claim for declaratory relief must be dismissed.

*Id.* at 1323-24; *see also Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, 2017 WL 1363344, at *2 (S.D. Fla. Apr. 5, 2017) (dismissing declaratory judgment claim against insurer when insured could obtain relief from a breach of contract claim); *Berkower v. USAA*, 2016 WL 4574919, at *3 (S.D. Fla. Sept 1, 2016) (dismissing declaratory relief claim against an insurer, noting "a court still must dismiss a claim for declaratory relief if it is duplicative of a claim for breach of contract, and, in effect, seeks adjudication on the merits of a breach of contract claim."); *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diag. Imaging, Inc.*, 2012 WL 1565387, at *4 (M.D. Fla. May 2, 2012).

In affirming the dismissal of claims for declaratory and injunctive relief in *Tiller v. State Farm Mut. Auto. Inc. Co.*, 549 F. App'x 849, 855 (11th Cir. 2013), the court noted that the declaratory and injunctive relief claims were really "direct actions for money damages masquerading as claims for equitable and declaratory relief." *Id.* So it is with Clearview's declaratory relief claim in this case. Clearview has an adequate available remedy at law, and the count for declaratory relief should be dismissed. *See Pan Am Diag. Servs. Inc. v. Equity*

*Ins. Co.*, 22 Fla. L. Weekly Supp. 814a (Fla. 11th Jud'l Cir. 2014) (**Exhibit 11**) (dismissing injunctive relief allegations in another PIP class action challenging medical bill payment methodology: "The only threatened harm here is the withholding of PIP benefits – a purely monetary issue which may be remedied by an action for monetary damages").

## Conclusion

WHEREFORE, Progressive respectfully requests that the Court dismiss the Class Action Complaint against Progressive in its entirety and with prejudice.

Respectfully submitted,

**AKERMAN LLP**

*/s/ Jason L. Margolin*
Irene A. Bassel Frick (FBN 158739)
Irene.basselfrick@akerman.com
Jason L. Margolin (FBN 69881)
jason.margolin@akerman.com
401 East Jackson Street, Suite 1700
Tampa, Florida 33602
Phone: 813.209.5009
Fax: 813.218.5488

and

Marcy Levine Aldrich (FBN 0968447)
marcy.aldrich@akerman.com
Trial Counsel
Ari H. Gerstin (FBN 0839671)
ari.gerstin@akerman.com
Ross E. Linzer (FBN 73094)
ross.linzer@akerman.com
Three Brickell City Centre
98 Southeast Seventh Street
Miami, Florida 33131
Phone: (305) 374-5600
Fax: (305) 374-5095

*Counsel for Defendant Progressive Select Insurance Company*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 20, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record on the below Service List.

*/s/ Jason L. Margolin*

**SERVICE LIST**

J. Daniel Clark
Clark & Martino, P.A.
Primary E-mail: dclark@clarkmartino.com
Secondary E-mail: rsmith@clarkmartino.com
3407 W. Kennedy Boulevard
Tampa, FL 33609
Tel: 813-879-0700

David M. Caldevilla, Esquire
de la Parte & Gilbert, P.A.
Primary email: dcaldevilla@dgfirm.com
Secondary email: serviceclerk@dgfirm.com
Post Office Box 2350
Tampa, Florida 33601-2350
Tel: 813-229-2775

Matthew A. Crist
Crist Legal | PA
Primary E-mail: cristm@cristlegal.com
606 East Madison Street
Tampa, FL 33602
Tel: 813-575-5200

*Counsel for Plaintiff*